### PRENTISS TOOL & SUPPLY CO. et al. v. GODCHAUX.

(Circuit Court of Appeals, Fifth Circuit. January 8, 1895.)

#### No. 241.

1. CORPORATIONS—EFFECT OF CERTIFICATE UNDER SEAL.

It seems that, where a corporation is not required by law or by its by-laws to keep official minutes of the proceedings of the board of directors, neither such corporation, nor any one claiming under it, can go behind a resolution, certified by the secretary under the seal of the corporation, and show that such resolution was not, in fact, passed.

2. SAME—RATIFICATION OF MORTGAGE—LOUISIANA STATUTE.

In Louisiana, the property of a corporation can be mortgaged only in the form provided by law, and the power to incumber must be express and special. The board of directors of a Louisiana corporation, on March 16, 1892, passed a resolution authorizing the president and secretary to execute a mortgage on the company's property, to secure an issue of bonds. On May 2d the president and secretary executed a mortgage to secure bonds, which varied, in some respects, from those authorized by the resolution of March 16th; attaching to such mortgage a certified copy of a resolution purporting to have been passed April 27th, authorizing the bonds in the form adopted. On May 6th, the board of directors approved the changes in the form of the bonds, and, by resolution, amended the resolution of March 16th, so as to conform its terms to those of the resolution attached to the mortgage. Held, that the bonds were fully ratified by the corporation.

3. SAME—RATIFICATION OF PLEDGE.

The president of the corporation, acting for it, pledged some of the bonds to one G., to secure a loan of $10,000 on notes of the corporation. A creditor of the corporation afterwards claimed that the pledge was without authority. It appeared that the corporation had received the loan secured by the pledge, and that certain payments had been made on the notes, which were not shown to be without the authority of the corporation. Held, that the pledge was ratified by the corporation.

4. EQUITY PLEADING—RESPONSIVENESS OF ANSWER.

A cross bill alleged that a certain corporation did not execute an act of pledge to the defendant in the cross bill, that no one was authorized by the corporation to execute such pledge, and that the defendant illegally obtained possession of the property claimed to be pledged. The answer to the cross bill alleged that the pledge was executed in good faith for the purposes of the corporation which received and used the proceeds thereof. Held, that the answer was responsive to the bill.

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

This was a suit by Leon Godchaux against the Prentiss Tool & Supply Company and others to enforce a lien upon certain bonds of the Taylor Bros. Iron-Works Company, Limited, and was heard

upon the cross bill of the Prentiss Tool & Supply Company, the answer thereto, and proofs.

W. S. Parkerson, for appellants.

J. D. Rouse and William Grant, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and BRUCE, District Judge.

PARDEE, Circuit Judge. On the 16th of March, 1892, the Taylor Bros. Iron-Works Company, Limited, a business corporation under the laws of the state of Louisiana, by a resolution, passed by its board of directors, authorized and instructed its president and secretary to cause to be passed and executed an act of mortgage on the real property of the corporation to secure an issue of bonds of the corporation to the amount of $50,000, being a series of bonds from 1 to 50, of $1,000 each, bearing interest at the rate of 6 per cent. per annum, and due at different periods, as in said resolution provided. The said act of mortgage was to contain the usual clauses of such acts in the state of Louisiana. On the 2d day of May, 1892, the president and secretary of the Taylor Bros. Iron-Works Company, Limited, passed and executed an act of mortgage before Taylor. notary, to secure an issue of bonds of the Taylor Bros. Iron-Works Company, Limited, to the amount of $50,000, falling due at different periods, and bearing 7 per cent, interest per annum. Attached to the act of mortgage was a certified copy, under the seal of the corporation, of a resolution purporting to have been adopted by the board of directors of the Taylor Bros. Iron-Works Company, Limited, on the 27th day of April, 1892, in all respects conforming to the act of mortgage passed. On the 6th of May, 1892, the board of directors of the Taylor Bros. Iron Works Company, Limited. at a meeting at which all the directors were present. approved the action of the president and secretary in changing the form of the bonds from the denominations of $1,000 to that of $5,000, and interest rate from 6 to 7 per cent.; and at the same meeting the resolutions of March 16th, authorizing the issue of bonds and the mortgage to secure the same, were so amended as to correspond in every particular with the resolutions purporting to have been passed on April 27, 1892, a copy of which was attached to the act of mortgage. On the 18th day of May, 1892, the president of the corporation, acting for the corporation, pledged four bonds to Leon Godchaux, to secure a loan of $10,000, represented by certain notes of the Taylor Bros. Iron-Works Company. Limited, and bearing date May 18th, and respectively due at 60 days, 90 days, and 4 months. The indorsements on the notes in evidence show payments by the corporation, from time to time, amounting to the sum of $3,250.

This case was tried in the circuit court on the cross bill of the Prentiss Tool & Supply Company, appellant in this court, and the sworn answer of Leon Godchaux, with the usual replication. The cross bill charged, among other things, that the Taylor Bros. Iron-Works Company, Limited, did not execute an act of pledge on the

18th day of May, 1892, or at any other time, to Leon Godchaux, and that no one was ever authorized by the said company to execute any such pledge; and, further, that the said Leon Godchaux, combining and confederating with W. R. Taylor, W. A. Taylor, and divers others, illegally obtained possession of the bonds in question, and now pretends to hold a pledge of said property, good against the creditors of the Taylor Bros. Iron-Works Company, Limited. The cross bill not waiving the same, Leon Godchaux answered under oath, and, among other things, averred as follows:

"That said act of mortgage, and the pledge of the four (4) bonds held by him, were executed long since, in perfect good faith, for the purposes of said corporation, which received and used the proceeds thereof in its business; that said corporation has not repudiated the same, and does not now repudiate them, and cannot, in equity and good conscience, after this lapse of time."

The questions presented in this court are whether the mortgage was and is invalid for want of authority on the part of the president and secretary to execute it, and whether the pledge to Godchaux was a valid pledge, and binding on the corporation.

Considering that the Taylor Bros. Iron-Works Company, Limited, was a private manufacturing and trading corporation, not required by law, nor, so far as shown, by any by-law of the corporation, to keep official minute books of the proceedings of the board of directors, we are not prepared to say, in the present case, that the Taylor Bros. Iron-Works Company, Limited, or any one claiming through or under such corporation, can go behind the resolution, certified by the secretary under the seal of the corporation, which was attached to the notarial act of mortgage, and show that such a resolution was not in fact passed. Authority entitled to great respect is not wanting to maintain an estoppel in such case. Whiting v. Wellington, 10 Fed. 810, and cases there cited. See, also, Railroad Co. v. Schuyler, 34 N. Y. 30. The appellant offered in evidence in the circuit court a book purporting to be the minute book of the Taylor Bros. Iron-Works Company, Limited, and counsel, having brought said minute book to this court, contends that, as this book contains no record of any meeting of the board of directors on April 27, 1892, the proof is conclusive that no such meeting was held, and, if no such meeting was held, the certified resolution attached to the notarial act is false and untrue, if not forged. The appellant's case requires this, because article 2236 of the Revised Civil Code of Louisiana provides that "the authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery." The view we take of the case does not require that we go further into this interesting inquiry, and we pass it, merely noticing that the book offered in evidence is not shown to be the only minute book of the corporation, nor to contain the minutes of all the meetings held by the board of directors.

In Louisiana, the property of a corporation cannot be mortgaged by contract in any other form or manner than that directed by law. Rev. Civ. Code La. art. 3302. The power to incumber or hypothecate must be express and special. Id. art. 2997. Corporations neces-

sarily act by and through agents. The corporate powers of the Taylor Bros. Iron-Works Company, Limited, were vested by the charter in a board of directors. It is admitted that this board, on the 16th day of March, 1892, by a resolution reduced to writing, authorized the president and secretary of the corporation to execute a mortgage on the corporation property to secure a series of bonds amounting to $50,000, and that on the 2d day of May, 1892, the president and secretary of the corporation, by notarial act, executed a mortgage of the corporation property to secure a series of bonds amounting to $50,000, but varying from the power granted March 16th in the matter of interest, in the number and amount of the bonds, and in the time in which the bonds should respectively mature. On the 6th day of May, 1892, the board of directors approved the changes made by the president in the number and amount of the bonds and in the rate of interest, and by resolution reduced to writing amended the resolution of March 16th so as to specifically authorize the president and secretary to execute for the corporation exactly such a mortgage as was executed by them on May 2d. The resolution, as amended, uses words referring entirely to the future, but it is to be noticed that the board was dealing with the resolution of March 16th, and endeavoring to make that resolution read as, in their opinion, it ought to have been passed on that day; and that the approval at the same time of the changes made by the president in the bonds shows clearly that the board then knew that the act of mortgage had been passed. We are of opinion that the resolution of May 6th was intended to be, and was, a full and complete ratification of the act of mortgage granted on May 2d; and we further consider that, the question involved being one of power, the date of April 27th, given by the secretary in the certified resolution appended to the act of mortgage as the date when the authority was given by the board of directors, becomes immaterial.

The validity of the pledge of four of the bonds to the appellee, Godchaux, we think should also be maintained. The mandate to make the pledge must be special (Rev. Civ. Code La. art. 2997), but, as it concerns movables, it need not be in writing (Id. art. 3158; Casey v. Schneider, 96 U. S. 496). If the partial payments which appear by indorsement on two of the notes in evidence were made by authority of the corporation (and such authority, in the absence of proof, is in some cases presumed,—Amis v. Insurance Co., 2 La. Ann. 594), then there was a ratification of the act of pledge. If the loan secured by the pledge was received by the corporation, or was usefully employed for its benefit, then the pledge was ratified. Rev. Civ. Code La. art. 3303. The sworn answer of Leon Godchaux to appellant's cross bill is to the effect that the proceeds of the loan secured by the pledge were received and used by the corporation. The appellant contends that this part of the answer of Leon Godchaux, although not impugned by any evidence in the record, cannot be considered as evidence in this case, because not responsive to any matter directly charged in the cross bill. As noticed above,

the cross bill charges that the Taylor Bros. Iron-Works Company, Limited, did not execute an act of pledge on the 18th day of May, 1892, or at any other time, to Leon Godchaux; that no one was ever authorized by said company to execute such pledge; and, further, that Godchaux illegally obtained possession of the bonds in question, and now pretends to hold the same in pledge. To these charges in the cross bill, the answer that the pledge was executed in perfect good faith for the purposes of the corporation, which received and used the proceeds thereof, seems to be responsive. See Dravo v. Fabel, 132 U. S. 487, 10 Sup. Ct. 170; Beals v. Railroad Co., 133 U. S. 290, 10 Sup. Ct. 314. The issue was one necessarily tendered by the cross complaint in order to rebut the presumption of Godchaux's ownership arising from possession. See Rev. Civ. Code La. art. 3454. The silence of the corporation as to the rightfulness of the pledge,—which silence is sworn to by Godchaux, and is otherwise shown by the record,—in the light of the fact that the board of directors knew that the bonds were issued and were in the custody of the president to raise money for the necessities of the corporation, known to have been pressing, is significant. In Merchants' Bank v. State Bank, 10 Wall. 604–644, it is declared by the supreme court of the United States that:

"Where a party deals with a corporation in good faith, the transaction is not ultra vires, and he is unaware of any defect of authority or other irregularity on the part of those acting for the corporation, and there is nothing to excite suspicion of such defect or irregularity, the corporation is bound by the contract, although such defect or irregularity in fact exists. If the contract can be valid under any circumstances, an innocent party in such a case has a right to presume their existence, and the corporation is estopped to deny them."

And again, the same court, in Mining Co. v. Anglo-Californian Bank, 104 U. S. 192–194, in dealing with a case where there was no evidence showing that the president and secretary of a business corporation were authorized by special authority to overdraw its bank account, said:

"Touching that liability, we have to say that, since the mining company had power, under its charter, to raise money, in that mode, for use in its corporate business, and since an indebtedness thus created would, in the usual course of business, be evidenced by the checks of its president and secretary, the presumption should be indulged, not only that those officers, in making an overdraft, did not exceed their authority, but that the moneys thus obtained were paid over to or received by, the company. But that is a mere presumption, arising from the conduct of the parties, as well as from the general mode in which corporations organized for profit conduct their business. That presumption, if not, under the special circumstances of this case, conclusive, might have been overthrown by affirmative proof of want of authority, express or implied, in the president and secretary of the mining company to make overdraft checks, and by proof that the company did not receive the money paid thereon by the bank. There is, however, no such proof in this case. The finding is entirely silent as to whether the company did not receive and use the money. And the finding that 'no resolution or special authority of the defendant was shown, authorizing its president and secretary, or either of them, to overdraw its account in bank,' fairly interpreted, means nothing more than that no proof was made either way on that point. It does not necessarily imply that a resolution to that effect was not, in fact, passed, nor that such special authority was not, in effect, given. The meager evidence upon which, according to the special finding, the case was tried below, is, we think,

insufficient to overturn the presumptions, which should be indulged in favor as well of the bank as of the integrity and fidelity of the officers of the mining company."

In Patterson v. Robinson, 116 N. Y. 193–200, 22 N. E. 372, the court of appeals, in speaking of a contract made by the president of a business corporation in its name, and ostensibly for its benefit, said:

"There is no evidence that the financial transactions between the bank and mill, prior or subsequent to May 1, 1875, were unknown to or disapproved by the board of either corporation; and this court will not, for the purpose of reversing the judgment, presume that the transactions were unauthorized by the boards. The contract does not appear to have been entered into for the personal benefit of Vail or Robinson, but solely for the benefit of the then involved corporations; and there is no evidence that Vail or Robinson profited, or sought to profit, by the contract. The contract was one which the boards of the corporations had power to authorize, their presidents to make, or to ratify after it had been made; and the burden was on the plaintiff to show that the contract was not authorized or ratified by the boards. Bank v. Warren, 7 Hill, 91; Gillett v. Campbell, 1 Denio, 520; Elwell v. Dodge, 33 Barb. 336; Bank v. Kohner, 85 N. Y. 189, 193; Smith v. Glass Co., 11 C. B. 897, 929; Lee v. Mining Co., 56 How. Pr. 373, affirmed 75 N. Y. 601; Mor. Priv. Corp. (2d Ed.) 336, 538, 593. The plaintiff failed to rebut the presumption that the contract was entered into or ratified by the authority of the boards of the corporations, and it must be held to be binding on both."

The principles declared in these cases are not in conflict with the Louisiana cases cited by the learned counsel for appellant. In Folger v. Peterkin, 39 La. Ann. 815, 2 South. 579, the proof was that the defendant, Mrs. Peterkin, had never given the agent any authority to draw drafts in her name, and that she never knew of the existence of such drafts until long after their maturity, when she immediately repudiated them. In Robertson v. Levy, 19 La. Ann. 327, the main question decided was whether a mandate to administer a plantation carried with it the authority to sign promissory notes binding on the principal. Nugent v. Hickey, 2 La. Ann. 358, was a similar case. Hills v. Upton, 24 La. Ann. 427, decides that an agency to settle a debt does not authorize the agent to give the principal's note therefor. Crossley v. Bank, 38 La. Ann. 86, decided that "a claim to the ownership of securities pledged cannot be recognized when it is apparent that the pledgor did not transfer them, and the pretended conveyance was made by one who never had any title to the ownership thereof, to the knowledge of the pledgee." In none of the opinions of the supreme court of Louisiana in these cases do we find any language used which, fairly applied to the cases passed upon, in any wise affects injuriously the validity of the pledge in the case now before this court. The propositions of law taken from the text-books and marshaled with apparent force in appellant's brief are too general to be of assistance in reaching a correct conclusion under the state of the proof and the presumption therefrom legally arising. As we have found that the act of mortgage was fully ratified, and the pledge to appellee was valid, the decree appealed from must be affirmed, and it is so ordered.