## VACUUM OIL CO. v. LIBERTY REFINING CO.

## KEYSTONE PIPE & SUPPLY CO. v. SAME.

### (No. 1365.)

(Court of Civil Appeals of Texas. El Paso. Oct. 23, 1924. Rehearing Denied Nov. 6, 1924.)

1. **Judicial sales**  62—**When rule for prorating funds among lien claimants applies, stated.**

Doctrine or rule of law for prorating funds received from sale of property among several. claimants holding liens which had attached prior to sale applies where the liens are of equal dignity and where the funds are insufficient to pay all claims in full.

2. **Mortgages**  186(5) — **In absence of evidence of amount of material furnished, contention that it be sold separately at receiver's sale involving priority of liens not well taken.**

In absence of evidence as to the amount of material furnished and used for additions to a plant, the contention of the materialman that such additions could have been sold separately at receiver's sale and removed without affecting its condition at the time a deed of trust to a bond was executed, in a proceeding to fix priority of liens, is not well taken.

3. **Mortgages**  151(3)—**Bank deed of trust lien superior to subsequently fixed materialman's lien.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 5628, the lien of a bank by virtue of deed of trust on land and improvements is made superior to a subsequently fixed materialman's lien.

4. **Corporations**  432(5)—**Burden on attacking party to overcome presumption of corporation president's authority to execute deed of trust.**

Ordinarily, authority of a corporation president to execute a deed of trust is presumed, the burden being on attacking party to show want of such authority.

5. **Corporations**  415—**Where deed of trust discloses on face authority of president to mortgage for stipulated sum only, attempt to secure future advances unauthorized.**

Where deed of trust discloses on its face authority which board of directors conferred on its president to be to mortgage its plant for a stipulated sum only, an attempt to secure future advances is unauthorized.

6. **Mortgages**  16—**Mortgages to secure future advances valid as to persons whose rights accrue subsequent to advancements or assumption of liability by mortgagee.**

Mortgages to secure future advances are valid as to all persons whose rights accrue subsequent in time to the making of the advancements or the assumption of liability by mortgagee.

7. **Mortgages**  151(3)—**Deed of trust superior to materialman's lien only to extent of authorized amount where overdrafts for which given not shown made prior to date material furnished.**

Where overdrafts to secure which deed of trust was executed are not shown to have been made prior to the dates on which materials were furnished for improvement of the mortgaged property, the deed of trust is superior to the materialman's liens to the extent only of the amount for which the mortgage was authorized to be executed.

Error from District Court, Eastland County; Geo. L. Davenport, Judge.

Action by the Vacuum Oil Company against the Liberty Refining Company, in which the Keystone Pipe & Supply Company, the Cisco Banking Company, and others intervened. Judgment for the first-named intervener was rendered, but payment of its claim was made subject to payment of claim of the last-named intervener, and the first-named intervener brings error. Reversed and rendered.

See, also, 247 S. W. 597, 251 S. W. 321, and 260 S. W. 1018.

Butts & Wright, of Cisco, and Theodore Mack, of Fort Worth, for plaintiff in error.

Patterson & Sherry, of Cisco, for defendant in error.

HARPER, C. J. This was a case brought by the Vacuum Oil Company against the Liberty Refining Company for the recovery of damages alleged to have resulted from a breach of contract and for the appointment of a receiver to take charge of the property and assets of the defendant. On July 30, 1920, receivers were appointed as prayed for. A master in chancery also was appointed to pass upon the validity of the claims and priority of liens asserted by the creditors of the defendant.

Numerous creditors intervened in the cause, among whom were Cisco Banking Company, Keystone Pipe & Supply Company J. M. Rockwell, Southwestern Mechanical

Company, and several small claims for labor. The claim of the Cisco Banking Company was based on a note for the sum of $52,486.-98, dated April 8, 1920, due and payable on or before July 7, 1920, with interest from maturity at the rate of 10 per cent. per annum, and providing for the payment of 10 per cent. for attorneys' fees if placed in the hands of attorneys for collection, and it was contended by this intervener that its claim was entitled to priority in payment over all other claims by reason of the deed of trust executed by the Liberty Refining Company, June 2, 1919, to secure payment of note of the Liberty Refining Company, for $25,000, of even date with the deed of trust, and due six months after date.

The claim of the Keystone Pipe & Supply Company for priority in the payment of its claim was based on a materialman's lien for material alleged to have been furnished the Liberty Refining Company for making "betterments, additions and extensions to and improvements on its oil refining plant and increasing the capacity thereof; the effect of which was to enhance and increase the security of all prior lienholders."

The property and assets of the Liberty Refining Company were sold by the receivers for the sum of $65,000, and the sale was approved by the court.

In the report made by the master in chancery, the claim of the Cisco Banking Company was allowed for the sum of $52,486.98, with interest at the rate of 10 per cent. per annum from July 7, 1920, until paid, and 10 per cent. additional on the principal and interest as attorney's fees, and was given priority in the order of payment over the claims of all other interveners, including the claim of the Keystone Pipe & Supply Company, except certain labor claims, aggregating $1,986.50. The claims of the Keystone Pipe & Supply Company were allowed for $1,469.19, but payment thereof was made subject and subordinate to the payment of the claim of the Cisco Banking Company, and of the Southwestern Mechanical Company for $834.75. This report was filed February 19, 1921. The Keystone Pipe & Supply Company excepted to so much of the master in chancery's report as denied preference in the payment of its claim over the claims of the Cisco Banking Company. On March 11, 1921, the trial court approved the report of the master in chancery and made it the judgment of the court to which judgment the Keystone Pipe & Supply Company, in open court, duly excepted and gave notice of appeal to the Court of Civil Appeals for the Second Supreme Judicial District of Texas. Judgment was rendered in favor of the Keystone Pipe & Supply Company against the Liberty Refining Company for the sum of $1,469.19, with interest from January 1, 1921, at the rate of 6 per cent. per annum.

Here on writ of error.

The undisputed evidence shows the following facts:

The board of directors of the Liberty Refining Company on May 14, 1919, by resolution authorized its "executive officers" to negotiate a loan for the sum of $25,000, and to pledge its assets to secure the payment of the loan. This amount was borrowed from the Cisco Banking Company upon a note dated June 2, 1919, executed by its president, and a deed of trust executed of even date, on certain lands and improvements thereon, to secure its payment. The deed of trust contained the following clause:

"Whereas it is contemplated that said party of the first part may hereafter become indebted to the bank in further sum or sums, which said indebtedness now accrued or which may hereafter accrue, it is agreed shall be payable in Cisco, Texas, * * * and this conveyance is made for the security and enforcement of the payment of said present and future indebtedness."

A copy of aforesaid resolution was attached to and made a part of the deed of trust.

On April 8, 1920, B. F. Ames, as president of the Liberty Refining Company, executed a note for $52,486.98 (the note filed with and allowed by the master in chancery and the basis of the judgment appealed from. It contains the following clause:

"This note is given in renewal and extension of note of date June 2, 1919, for the sum of .$25,000.00 and account for money advanced to us and carried as overdraft by said bank."

Nothing in the record to show when this money carried as overdraft was advanced.

The Keystone Pipe & Supply Company sold and delivered to the Liberty Refining Company, during the months of January, February, March, and April, 1920, material which was used in its plant, allowed by the master in chancery in the sum of $1,469.19, and this is the sum in controversy upon this appeal.

The first point is: The court erred in rendering judgment in favor of the Cisco Banking Company decreeing to it priority of payment over the Keystone Pipe & Supply Company, because the material furnished by the latter was used in making betterments and additions to the improvements on the plant of the refining company, covered by the deed of trust of the bank which enhanced its value to the extent of $60,000, and that the additions could have been sold and removed without affecting the value of the plant as it existed prior to the time they were added thereto.

The second point is: That since the materialman had a prior lien on the plant because of the improvements made of the material furnished, and they not having been sold separately but the plant sold as a whole, the proceeds of the sale should have been prorated.

[1] The doctrine or rule of law for prorating the funds received from sale of property among several claimants holding liens which had attached prior to sale would apply to cases where the liens were of equal dignity and there were not funds sufficient to pay all in full, and the record here does not present such a case.

[2] These propositions present the further question that the additions to the plant, such as stills constructed out of the material furnished, could have been sold separate and removed from the plant without affecting its condition as it existed at the time the deed of trust to the bank was executed, and therefore should have been sold separately, and were not, but sold as a whole, and since the evidence shows that the value of the plant was thereby increased in the sum of $60,000, the appellant should have recovered the amount of its claim. The uncontradicted evidence is that the additions could have been removed without affecting the value of the plant as it existed prior to the time they were made to the plant, but there is no evidence as to how much of the material furnished by appellant went into these additions, and without such showing the point is not well taken.

The further point is urged that it was not shown by any evidence that the president of the refining company was authorized by the directors to execute the note for the additional amount over the original $25,000 note which the deed of trust was made to secure, and that without such showing by the bank the appellant should have recovered because its lien had priority over the additional sum.

[3] By article 5628, Rev. Civ. Statutes (Vernon's Sayles'), the bank's lien on the land and improvements is made superior to the subsequently fixed materialman's lien. Sullivan & Co. v. Texas B. & Coal Co., 94 Tex. 541, 63 S. W. 307.

In this connection it is urged by the third proposition that—

"The deed of trust in favor of the Cisco Banking Company, upon which it relies for priority in the payment of its claims, was executed by the president under authority of a resolution of the board of directors of the Liberty Refining Company, which authorized him to execute a deed of trust on and covering the plant and property of the refining company to secure payment of a note for $25,000, of even date with the deed of trust; but there is no evidence in the record showing that the board of directors of the refining company authorized the president to incur any further or future indebtedness, nor to execute a mortgage to secure the payment of any future advances, nor to execute the note for $52,486.98; that the president, having no authority to execute the deed of trust to secure any indebtedness other than the $25,000 note, described in the deed of trust, the deed of trust was and is void in so far as it undertakes to secure payment of any indebtedness other than the $25,000 note described therein, and the bank was not entitled to priority in the payment of any sum except that evidenced by the $25,000 note."

[4] Ordinarily, the authority to execute the mortgage would be presumed and the burden is upon the appellant to show want of authority. Ballard v. Carmichael, 83 Tex. 355, 18 S. W. 734; Brownwood, etc., v. York et al. (Tex. Civ. App.) 37 S. W. 339.

[5] However, in this case appellee's deed of trust upon its face discloses the authority which the board of directors conferred upon the president to be to mortgage the plant for $25,000 only; therefore the attempt to secure future advances were unauthorized. Fitzhugh et al. v. Franco-Tex. Land Co., 81 Tex. 306, 16 S. W. 1078.

[6] The fourth questions the validity of a mortgage to secure future advances. There is no doubt that such mortgages are valid to all persons whose rights accrue subsequent in time to the making of the advancements or the assumption of the liability by the mortgagee. 19 R. C. L. § 210, p. 429.

[7] But this record does not show that the overdrafts were made prior to the dates upon which the materials were furnished by the appellant, so the deed of trust is superior to the materialman's lien to the extent of $25,000 only. Utica Bank v. Finch, 3 Barb. Ch. (N. Y.) 293, 49 Am. Dec. 175.

The cause is therefore reversed and rendered giving priority to appellant's lien on the proceeds of the trustee's sale in excess of $25,000.