CISCO BANKING CO. v. KEYSTONE PIPE
& SUPPLY CO.   (No. 559–4302.)

(Commission of Appeals of Texas, Section B.
Dec. 10, 1925.)

1. Corporations ⬥432(1)—Authority to exe-
cute mortgage presumed.

Ordinarily, the authority of president of a
corporation to execute a mortgage on its prop-
erty would be presumed, and burden of proof is
on a contestant.

2. Mortgages ⬥16—Validity not assailable by
lien claimant for materials subsequently de-
livered.

The validity of a trust deed by a corpora-
tion to a bank to secure advances past and
future cannot be assailed by a lien claimant for
materials delivered to corporation as to all ad-
vances made prior to delivery of materials.

3. Corporations ⬥432(1).—Presumption is in
favor of validity, in absence of attack on pre-
sumption that provision in mortgage executed
by president was ratified.

In contest between claimant under mort-
gage of corporation and materialman's lien
claimant, as to priority of respective liens
against the corporation, in absence of attack on
presumption that provision in mortgage execut-
ed by president so as to cover past and future
advances was ratified by corporation, presump-
tion is in favor of its validity.

4. Mortgages ⬥16—To secure future advanc-
es are valid.

Mortgage to secure future advances is valid
as to all persons whose rights accrue in time
subsequent to the making of advancements.

5. Mechanics' liens ⬥279—Mechanic's lien-
holder has burden of proving lien on partic-
ular building.

In contest between lienholders against cor-
porate properties, claimant of materialman's
lien has burden of proving conditions entitling
him to fix lien on a particular piece of prop-
erty, in view of Rev. St. 1911, art. 5628.

6. Mortgages ⬥151(3)—Mortgage to secure
advances to corporation held superior to me-
chanic's lien claim for materials on failure
to prove in which buildings materials were
used.

In controversy between bank claiming un-
der deed of trust of corporation to secure
advances past and future and claimant of me-
chanic's lien for materials delivered subse-
quently to execution of mortgage, as to re-
spective priorities of liens, mortgage lien claim-
ant held to prevail, especially where mechanic's
lien under Rev. St. 1911, art. 5624, failed to
point out particular part of property of cor-
poration into which materials went, in view of
articles 5626 and 5628.

Error to Court of Civil Appeals of Eighth
Supreme Judicial District.

Action between the Vacuum Oil Company
and the Liberty Refining Company, in
which the Keystone Pipe & Supply Company,

Cisco Banking Company, and others inter-
vened. Judgment for the first-named inter-
vener was made subject to a payment of
claim of last-named intervener, and the first-
named intervener brought error in the Court
of Civil Appeals (265 S. W. 749). Judgment
was reversed and rendered for the first-
named intervener, and the last-named inter-
vener brings error. Reversed and judgment
of trial court affirmed.

B. W. Patterson, of Cisco, for plaintiff in
error.

Butts & Wright, of Cisco, for defendant
in error.

SHORT, J.  The Vacuum Oil Company, a
foreign corporation, brought this suit against
the Liberty Refining Company to recover cer-
tain damages based upon the alleged breach
of a contract and for the appointment of a
receiver. In compliance with the application
of the original plaintiff, receivers were ap-
pointed, and a master in chancery also, to
pass upon the validity of claims and priority
of liens asserted by the creditors of the Lib-
erty Refining Company, among which were
the plaintiff in error, Cisco Banking Com-
pany, and the Keystone Pipe & Supply Com-
pany, the defendant in error herein.

The claim of the banking company was
based on a note for the sum of $52,486.98,
dated April 8, 1920, due July 7, 1920, with
10 per cent. interest from maturity, and
providing for 10 per cent. attorneys' fees.
It was the contention of its owner that it
had priority in payment over all other claims
by reason of the fact that the Liberty Re-
fining Company on June 2, 1919, executed a
deed of trust on all of its property, includ-
ing certain lots and tracts of land and the
buildings and machinery located thereon and
used in the operation of the plant, to secure
the payment of a note of $25,000 of even
date with the deed of trust, due six months
after date, and certain additional advance-
ments mentioned therein.

The claim of the Keystone Pipe & Supply
Company for priority in the payment of its
claim was based on a materialman's lien for
material alleged to have been furnished the
Liberty Refining Company for making "bet-
terments, additions and extensions to and im-
provements on its oil refining plant and in-
creasing the capacity thereof; the effect of
which was to enhance and increase the se-
curity of all prior lienholders."

In the report made by the master in chan-
cery, the claim of the banking company was
allowed in full and was given priority in
the order of payment over the claims of all
other interveners, including the defendant
in error, except certain labor claims, about
which there is no contest. The claim of
the defendant in error was allowed for $1,-
469.19, but payment thereof was made sub-

ject and subordinate to the payment of the claim of the banking company and that of one other company, about which there seems to be no contest here, which report was duly excepted to by the defendant in error in so far as it denied preference in the payment of its claims over the claims of the plaintiff in error, notwithstanding which exception the trial court approved the report of the master in chancery and made it the basis of the final judgment rendered. Upon appeal by the defendant in error to the Court of Civil Appeals, upon a consideration of the issues presented, the judgment of the trial court was reversed and judgment rendered giving priority to the lien of the defendant in error on the proceeds of the trustee's sale in excess of $25,000, on the ground that it affirmatively appeared that the `Liberty Refining Company, a private corporation, had not fixed its lien on its property in favor of the banking company to secure the payment of any sum in excess of $25,000. 265 S. W. 749.

The deed of trust executed by the refining company to the banking company in pursuance of the resolution authorizing its executive officers to execute a deed of trust on its property to secure the payment of $25,000 contained the following clause:

"Whereas, it is contemplated that said party of the first part may hereafter become indebted to the bank in further sum or sums, which said indebtedness now accrued or which may hereafter accrue, it is agreed shall be payable in Cisco, Tex., * * * and this conveyance is made for the security and enforcement of the payment of said present and future indebtedness."

The difference between the $25,000 and the amount allowed by the trial court evidently represents the further sum or sums of indebtedness mentioned in this clause, and in fact there is no question made about the validity of the indebtedness, since the note executed by the Liberty Refining Company, through its president, heretofore mentioned, contained the following clauses:

"This note is given in renewal and extension of note of date June 2, 1919, for the sum of $25,000.00 and account for money advanced to us and carried as overdraft by said bank."

The materials furnished by the defendant in error were furnished after the execution of the deed of trust. No question seems to have been made as to the validity of the lien claimed by the defendant in error, nor the validity of the lien claimed by the plaintiff in error except as to the additional sums not represented by the note given for $25,000.

Upon due application, all the property of the refining company was sold for $65,000, and it is apparent that the debts so far exceeded this sum, and the priority of other claims amounted to so much, that nothing would be left to be appropriated upon the claim of the defendant in error if the judgment of the trial court should be sustained. The plaintiff in error having presented to the Supreme Court its application for writ of error, the same was granted, and the case has been referred to this section of the Commission of Appeals for disposition.

[1-3] The first assignment of error assails the correctness of the judgment of the Court of Civil Appeals in holding that inasmuch as the deed of trust in favor of appellee (banking company) "upon its face discloses the authority which the board of directors conferred upon the president to be to mortgage the plant for $25,000 only; therefore the attempt to secure future advances were unauthorized." However, the Court of Civil Appeals very correctly says that "ordinarily, the authority to execute the mortgage would be presumed and the burden is upon the appellant to show want of authority." But it further holds that since the deed of trust upon its face disclosed the authority which the board of directors conferred upon the president to be to mortgage the plant for $25,000 only, the attempts to secure future advances were unauthorized, and in support of this holding the case of Fitzhugh et al. v. Franco-Tex. Land Co., 81 Tex. 306, 16 S. W. 1078, is cited. An examination of that case discloses that it was a suit by the Franco-Texas Land Company, a corporation, to cancel certain conveyances of land made by its former president, on the ground that the execution of these conveyances was unauthorized as well as fraudulent; whereas, in this case the validity of the deed of trust executed by the president of the corporation is assailed by a stranger to the original transaction. The corporation whose deed of trust is assailed, while a party to the suit, has not seen fit to question the validity of the instrument. In Thompson on Corporations, p. 630, it is stated that—

"In general it may be said that one whose rights are not injuriously affected by reason of the fact that a corporation is acting in excess of its powers or beyond the warrant of law has no standing in court to complain of the same."

In the case of Gulf Pipe Line Co. v. Lasater (Tex. Civ. App.) 193 S. W. 777, a quotation from the case of Eno v. Crooke, 10 N. Y. 60, is cited with approval to the effect that none but the corporation or its stockholders or creditors can impeach a transfer of property by the corporation for the want of previous action of the board of directors, and then only by direct action brought for that purpose, saying that strangers have no interest in the question and cannot go back of the assignment and collaterally impeach the transfer for want of formalties imposed by statute for the benefit and protection of others. Of course, these authorities do not advance the proposition that one whose rights in existence at the time are injurious-

ly affected by reason of the fact that a corporation is acting in excess of its powers has no standing in court to complain of the same.

So, in this case, the rights of the defendant in error to assail the validity of the trust deed in so far as it affects advances beyond the $25,000 expressly provided for in the resolution must depend upon the fact whether the advances made to the corporation were subsequent in time to the delivery of the material by the defendant in error to the corporation. If A. and B. are creditors of an insolvent and defunct corporation whose property has been converted into cash insufficient in amount to satisfy the demands of both, then the respective rights of A. and B. must depend upon the fact that the one became a creditor at a time when the other was not a creditor, presupposing that both had liens of equal dignity. In such a proceeding, the rules of pleading and of procedure generally must govern. There is no question made about the good faith of the defunct corporation and the banking company in providing for the security of advances beyond the $25,000, nor is there any question made about the fact that these advances were made to it by the banking company. The record shows that at the time of the execution of the mortgage to the bank and of its filing for record in April, 1919, the defendant in error was not a creditor of the refining company. Neither is there any attack upon the presumption that the provision in the mortgage of the refining company was ratified by the corporation, and in the absence of such attack under the facts of this case the presumption is in favor of its validity. Patterson v. Robinson et al., 116 N. Y. 193, 22 N. E. 372; Prentiss Tool & Supply Co. v. Godchaux, 66 F. 234, 13 C. C. A. 420.

[4-6] The second assignment of error attacks the judgment of the Court of Civil Appeals based upon the ground that "this record does not show that the overdrafts were made prior to the dates upon which the materials were furnished by the appellant, so the deed of trust is superior to the materialman's lien to the extent of $25,000," and in this connection it may be noted that the defendant in error neither pleaded nor offered evidence to show the bank had notice of its claim and that the advancements authorized by the deed of trust were made subsequent to such notice. In 19 R. C. L. § 210, p. 429, this proposition is stated:

"The record of a mortgage to secure future advances is notice to all subsequent incumbrancers as to advances made before their incumbrances." And further: "All the adjudications appear to agree that, in the absence of notice of an inferior lien, the holder of security for future advances may continue to treat the property as free from subsequent incumbrance, and therefore can safely make further loans to the debtor. His prior equity under the mortgage is superior to the subsequent equity of one who holds a later lien as to all advances made in ignorance of such subsequent incumbrance, whether made before or after it attaches to the property." Pomeroy on Equity Jurisprudence, 4th Ed., p. 2855, sec. 1198; City National Bank v. Laughlin (Tex. Civ. App.) 210 S. W. 617, 618; Shirras v. Caig, 7 Cranch, 34, 3 L. Ed. 260; Tapia v. Demartini, 77 Cal. 383, 19 P. 641, 11 Am. St. Rep. 290, 291; Ward v. Cooke et al., 17 N. J. Eq. 93, 99; 116 Am. St. Rep. 692.

The intervention of the banking company alleged that the deed of trust covered all improvements then on the land described and thereafter to be placed thereon, the lands upon which the improvements were placed being particularly described and a copy of the deed of trust was attached as an exhibit to the plea of intervention, as well as a copy of the resolution authorizing the execution of the deed of trust.

The pleadings of the defendant in error allege the delivery of the articles to the refining company between the 5th of January, 1920, and the 9th of April, 1920, and that the articles were used by the refining company in making "betterments, additions, and extensions to, and improvements on its said refinery, and increasing the capacity thereof, and now constitutes a part and portion of said refinery and constitutes a part of the corpus of the property of said refinery, the effect of which was to greatly enhance and increase the value of said refinery and likewise to enhance and increase the security of all prior lienholders." The plea further alleged that on the 23d day of April, 1920, the defendant in error filed with the county clerk of Eastland county for record a verified account of the aforesaid material so sold and furnished to the refining company, duly verified as the law requires. The petition further declares that the effect of the use of the material so sold and furnished was to enhance and increase the security of all prior lienholders, and therefore it is alleged the defendants in error have a first lien "on the hereinbefore mentioned and described property of the defendant Liberty Refining Company." The only allegation describing the property is in these words:

"That at the times and in the matters hereinbefore mentioned, referred to and complained of, the defendant Liberty Refining Company owned and still owns an oil refinery in the city of Cisco in said Eastland county, the same being located and situated on blocks Nos. 1, 2, 17, 18, 19 and 20 in said city of Cisco as shown by the map and plat of said city of record in the record of deeds of said Eastland county."

The prayer of the defendant in error is that—

"They have and recover judgment for their debt with interest thereon from the 4th day of April, 1920, at the rate of 6 per cent. per annum and for all costs incurred, and that they

be decreed to have a first and prior lien on the hereinbefore described property and premises, and for an order and decree directing the sale thereof for the payment of their debt and for such other relief, general or special, as they may by reason of the premises be entitled."

Article 5626 of the Revised Civil Statutes of 1911 provides that a "description of the house, building or improvement, and the lot or tract of land" shall accompany the contract fixing the materialman's lien. It may be conceded that the description of the lots and tracts of land belonging to the refining company accompanying the contract is sufficient to identify the same, but there is no description attempted to be given of the houses,' buildings, or improvements located upon said lands. However, no attack has been made upon the sufficiency of the description to fix the materialman's lien, and we only advert to this matter for the purpose of calling attention to the provisions of article 5628 of said statutes, which provides for the separate sale of any house, building, or improvement upon which a materialman's lien had been fixed, since it would appear that in a contest between lienholders the burden of proof would rest upon that particular lienholder to allege and prove a condition which would entitle him under the Materialman's Lien Law to fix his lien on the particular house, building, or improvement upon which he asserted such lien. There was no attempt to allege that the materials furnished by the defendant in error were used in the erection of any house, building, or improvement, or in the repair of any house, building, or improvement, or in the construction of any particular building located upon the lands of the refining company, nor was there any assertion of the materialman's lien upon any particular part of the property belonging to the refining company, but, on the contrary, a lien was asserted upon the entire property belonging to the refining company. R. S. 1911, art. 5624.

The Court of Civil Appeals correctly holds a mortgage is valid to secure future advances as to all persons whose rights accrue in time subsequent to the making of the advancements. The plaintiff in error alleged and proved its lien on all the property belonging to the defunct corporation, while the defendant in error alleged its lien covered all of said property, but the uncontradicted evidence showed its lien embraced only a part, but did not show the particular parts to which its lien attached with sufficient certainty to identify all of them or the value of those parts upon which the materials furnished were used in detail. Under our liberal rules of pleading even in equitable proceedings, since the whole embraces any and all parts of the whole, had the evidence furnished the trial court with substantial data whereby it could have ascertained and valued the particular parts of the property upon which the lien of the defendant had been fixed, it may have had a basis to render a judgment in its favor. This is especially true where the lien is one provided by our Constitution, as the lien held by the defendant in error is, and one which the courts have always held should be liberally construed in favor of such lienholder. But the Court of Civil Appeals has found the fact to be, which finding is amply supported by the record, that there is no evidence as to how much of the material furnished by the defendant in error went into the additions upon which the material was used. In this connection, the Court of Civil Appeals also finds that the additions to the plant such as stills upon which the materials in part were used could have been detached and sold separately, though the record fails to show any objection by the defendant in error to the sale of all of the property in bulk, and in the absence of such an objection duly made, the authority to make the sale in that way cannot be questioned. The Court of Civil Appeals finds that the value of the entire property belonging to the refining company was enhanced $60,000 by the additions. Since the value of the materials furnished by the defendant in error was less than $1,500 and there was no evidence segregating those parts of the property upon which some of the materials furnished was used, even though there had been pleading upon which to base it, and since under the facts the burden was on the defendant in error to do this, it is obvious that this finding as to the enhanced valuation of all the property belonging to the refining company is not material to a determination of the rights of the parties to participate in the proceeds of the sale of such property.

It is also our opinion that under the pleadings of the defendant in error the burden was on it to show that the provision of the mortgage of the refining company as to the additional advancements was not ratified by the corporation, which the record affirmatively shows it did not discharge, and also to allege and prove that the material furnished by it was used in the erection of certain buildings or improvements, or in the repair of certain buildings or improvements, or in the construction of certain buildings or improvements belonging to the refining company, describing them in such a way as to identify the same, in order for it to have established its right to priority of its claim or to prorate with the banking company the fund in the registry of the court, and since there is no such allegation, even though there is some such proof, which, however, was legally insufficient as has been seen, we conclude that the lien of the banking company is superior to that of the defendant in error and that the former is entitled to prior

payment of its entire claim out of the fund above mentioned.

We therefore recommend that the judgment of the Court of Civil Appeals be reversed, and the judgment of the trial court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.