**RICHARD H. SIKES, INC., Appellant,**

v.

**L & N CONSULTANTS, INC., Appellee.**

No. 5997.

Court of Civil Appeals of Texas, Waco.

Sept. 13, 1979.

Rehearing Denied Oct. 4, 1979.

James K. Peden, III, David K. Meyercord, Strasburger & Price, Dallas, for appellant.

Larry M. Lesh, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellee.

HALL, Justice.

On August 25, 1972, Lomas & Nettleton Financial Corporation loaned $2,314,645.00 to First National Development Company. The money was used by First National, as intended by the parties, to acquire 34.86 acres located in the City of Dallas and to develop the land into lots for the construction of 250 townhouses to be known as Preston Square. The loan was evidenced by First National's promissory note dated August 25, 1972; and it was secured by First National's deed of trust, which was recorded on August 28, 1972. The trust deed conveyed the 34.86 acres which would be developed into the 250 townhouse lots; and it recited that in addition to the note of August 25, 1972, it secured "all other indebtedness, of whatever kind or character, owing or which may hereafter become owing" by First National to Lomas & Nettleton. At the time of the acquisition and development loan on August 25, 1972, First National and Lomas & Nettleton contemplated a future loan to finance construction of the initial 36 townhouses. This was accomplished on November 30, 1973, when Lomas & Nettleton loaned $1,700,000.00 to First National for that purpose. The loan was evidenced by First National's promissory note bearing that date. Under those facts—the dragnet clause in the deed of trust of August 25, 1972, and the contemplated future loan at that time and its later fulfillment—the indebtedness evidenced by the November 30, 1973, promissory note was also secured by the August 25, 1972,

deed of trust. *Moss v. Hipp*, (Tex.1965) 387 S.W.2d 656, 658.

First National also executed a deed of trust securing the November 30, 1973, note, which created a lien on the 36 townhouse lots. The deed of trust was recorded December 7, 1973. It provided in part as follows: "To the extent the proceeds of the note are used to pay any outstanding lien, charge or prior encumbrance against the herein described premises, such proceeds have been advanced by beneficiary at grantor's request; and beneficiary shall be subrogated to any and all rights or liens owned or granted by any owner or holder of such outstanding liens, charges and prior encumbrances, irrespective of whether said liens, charges or encumbrances are released of record." Lomas & Nettleton advanced $369,000.00 of the proceeds of the November 30, 1973, note to First National in reduction of the loan of August 25, 1972; and it released from the August 25, 1972, deed of trust lien the 36 townhouse lots which were covered by the November 30, 1973, deed of trust. Under those circumstances, Lomas & Nettleton, the beneficiary under both trust deeds, became subrogated under the November 30, 1973, deed of trust to the August 25, 1972, deed of trust lien. *Providence Institution For Savings v. Sims*, (Tex. 1969) 441 S.W.2d 516, 519.

In September, 1975, Lomas & Nettleton assigned both notes and deeds of trust to defendant-appellant L & N Consultants, Inc.

On August 25, 1972, the day that First National executed its promissory note to Lomas & Nettleton for the acquisition and development loan and the deed of trust securing the loan, plaintiff-appellant Richard H. Sikes, Inc., and First National entered into a written contract under which plaintiff, as general contractor, would construct the initial 36 townhouses in Preston Square for First National. The contract was not recorded in the Mechanic's Lien Records; and plaintiff did not take any action under the contract toward construction of the townhouses until November,

1972. Therefore, under the provisions of section 2 of Article 5459, Vernon's Tex.Civ. St., plaintiff's mechanic's lien incepted in November, 1972, which was of course after the deed of trust securing the acquisition and development loan was recorded on August 28, 1972.

Plaintiff completed its work under the contract in August, 1975; and in September, 1975, it recorded its mechanic's and materialman's lien in the amount of $83,-197.65. Following default by First National on the promissory notes, defendant foreclosed its liens; and on October 7, 1975, defendant purchased the 36 lots at foreclosure sale under the November 30, 1973, deed of trust for $350,000.00 and the remaining acreage at foreclosure sale under the August 25, 1972, deed of trust for $1,300,000.00.

Plaintiff brought this suit against defendant to enforce its mechanic's and materialman's lien against the property. Particularly, plaintiff pleaded for enforcement of its lien against improvements "which can be removed without material injury to the land or [remaining] improvements or to the improvements removed." Defendant answered with a general denial and several special denials, and a counterclaim for expenses allegedly incurred by it to repair and complete defective workmanship by plaintiff. Defendant also alleged that plaintiff's lien was extinguished by the foreclosure sales under the deeds of trust, that plaintiff's recorded lien constituted an invalid cloud upon the title to the land, and that the lien should be cancelled and set aside.

After depositions had been taken and filed, defendant moved for summary judgment on the pleadings, the depositions, and the motion and its supporting affidavit. Plaintiff filed a controverting affidavit. After hearing, the motion was granted and judgment was rendered canceling and setting aside plaintiff's lien and decreeing that plaintiff take nothing.

Defendant's motion set forth these grounds for the summary judgment: (1) Plaintiff's lien for labor and materials was subsequent and inferior to defendant's deed of trust liens, and it was therefore extinguished by the foreclosure sales under the deeds of trust; and (2) under the record the lien was invalid and unenforceable because (a) a part of the labor and materials for which the lien was claimed were furnished by persons and corporations other than plaintiff and were not paid for by plaintiff, and (b) the remainder of the labor and materials for which the lien was claimed were expended by plaintiff on the construction and paving of a public street which does not abut the premises covered by the lien. We hold the record does not support the judgment on those grounds.

Summary judgment is proper if the record shows there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law on the issues as expressly set out in the motion or in an answer or any other response. Rule 166–A(c), Vernon's Tex.Rules Civ.Proc. In determining the propriety of summary judgment, both in the trial court and on appeal, all conflicts in the evidence are disregarded, the proof which tends to support the position of the party opposing the motion is accepted as true, and all doubts as to the existence of a genuine issue of material fact are resolved against the movant. *Farley v. Prudential Insurance Company*, (Tex.1972) 480 S.W.2d 176, 178.

Article XVI, Sec. 37, Vernon's Tex.Const., gives mechanics, artisans and materialmen of every class a lien on buildings and articles on which they labor or for which they furnish materials, and specifies that the Legislature shall provide by law for the speedy and efficient enforcement of the lien. The lien granted therein is self-executing as between the owner and the laborers and materialmen who contract directly with the owner, without need of any legislative act. *First National Bank in Dallas v. Whirlpool Corp.*, (Tex.1975) 517 S.W.2d 262, 267; *Hayek v. Western Steel Co.*, (Tex.1972) 478 S.W.2d 786, 789; *Strang v. Pray*, 89 Tex. 525, 35 S.W. 1054, 1056 (1896). Pursuant to the mandate set forth therein, the Legislature has enacted Arti-

cles 5452 et seq., Vernon's Tex.Civ.St., prescribing the lien and providing for the securing, priority, and enforcement of the lien. Section 1 of Article 5459, dealing with attachment and enforcement of the lien, reads as follows:

"Section 1. The lien herein provided for shall attach to the house, building, improvements or railroad for which they were furnished or the work was done, in preference to any prior lien or encumbrance or mortgage upon the land upon which the houses, buildings or improvements, or railroad have been put, or labor performed, and the person enforcing the same may have such house, building or improvement, or any piece of the railroad property, sold separately; provided, any lien, encumbrance or mortgage on the land or improvement at the time of inception of the lien herein provided for shall not be affected thereby, and holders of such liens need not be made parties in suits to foreclose liens herein provided for."

Under the terms of the statute, it is now settled that a deed of trust lien existing upon the land prior to the time of inception of the mechanic's lien does not become subordinate to the mechanic's lien; that foreclosure sale of the senior lien extinguishes the junior lien on the land and all improvements except improvements which can be removed without material injury to the land and pre-existing improvements or the improvements removed; that the mechanic's lien is superior to the prior deed of trust lien on the removals; and that the removals may be foreclosed on and sold to satisfy the mechanic's lien. *Diversified Mortgage Investors v. Lloyd D. Blaylock General Contractor, Inc.* (Tex.1978) 576 S.W.2d 794, 806; *First National Bank in Dallas v. Whirlpool Corp.* (Tex.1975) 517 S.W.2d 262, 269; *Houk Air Conditioning, Inc. v. Mortgage & Trust, Inc.,* 517 S.W.2d 593, 595 (Tex.Civ.App.—Waco 1975, no writ).

The record in our case shows without contradiction that there were improvements furnished and installed by plaintiff's subcontractors in the form of carpets, appliances, components of the air conditioning and heating equipment, smoke detectors, burglar alarms, light fixtures, and locks on doors, which fit within the removals rule. Accordingly, if those items were properly available to plaintiff for satisfaction of its lien, then plaintiff's lien thereon was superior to the prior deed of trust liens and was not extinguished by the foreclosure sales under the trust deeds.

The work directly performed by plaintiff in the construction of the townhouses was a large portion of the carpentry, all of the cleaning up, part of the concrete work, and the sidewalks and other flatwork. The balance of the work, including the furnishing and installation of the removals enumerated above, was performed by plaintiff's subcontractors. Additionally, during the course of the construction of the townhouses and as a part of that contract First National orally requested that plaintiff construct a public street known as Noel Road and agreed to pay plaintiff for the work. The 250 townhouse lots of Preston Square abut and are surrounded by a public street known as Montego Plaza which is the only access to the lots. We interpret the record to show that Montego Plaza was constructed as a part of the original development of the lots. Noel Road extends 3,300 feet from Montego Plaza to LBJ Freeway in Dallas, and is the only public access to Montego Plaza. Noel Road was constructed by plaintiff through its subcontractor at the cost of $82,000.00. Plaintiff paid the subcontractor in full and has been reimbursed for all but $35,777.87 which is still owed to plaintiff by First National for the road construction.

Plaintiff alleged that when it completed the contract, First National owed plaintiff a balance of $205,723.78 for the labor and materials furnished by plaintiff for construction of the improvements. This balance due was reiterated in plaintiff's controverting affidavit to defendant's motion for summary judgment.

When plaintiff filed this suit it owed its subcontractors the sum of $47,419.78. After the suit was filed, First National paid

two of the subcontractors and plaintiff paid four others, but plaintiff still owes its subcontractors $35,915.65. This debt includes $503.77 to a hardware company, $13,137.56 and $430.04 to two carpet companies, $4,452.50 to a smoke detector and burglar alarm company, and $5,140.52 to an air conditioning company, all incurred in part for the purchase of some of the removals claimed by plaintiff. The remainder of the debt is for improvements that cannot be removed. One of the carpet suppliers has filed a lien and it has also filed suit against plaintiff, but it has not filed suit to foreclose its lien. The supplier of the smoke detectors and burglar alarms has also filed suit against plaintiff. Additionally, plaintiff has given its note for $6,615.32 to a concrete company for foundation work which is included in the sum owed to the subcontractors. Except for the $35,915.65 balance, all of the subcontractors have been paid in full.

During the deposition of plaintiff's president, he was asked by defendant's counsel, "What makes up the balance of the $83,197.65 lien claim?" Plaintiff's counsel interrupted to say, "Let me clarify something there. You are just talking about how he calculated [the amount of the lien]." Defendant's counsel responded, "Right." Plaintiff's counsel then said, "Let me clarify that's not the amount he claims is due under the contract. That's just how he calculated [the amount of lien]." Defendant's counsel responded, "All right, we will get to that." Then, plaintiff's president continued by stating that the amount of the lien was reached by plaintiff by adding the $47,419.78 it then owed to its subcontractors and the $35,777.87 balance owed to plaintiff for the construction of Noel Road.

■ Defendant contends that plaintiff's lien is invalid because (1) it is based in part upon the construction of Noel Road which, not abutting the premises upon which the lien is attached, is not an improvement to the premises for lien purposes within the meaning of section 1 of Article 5452, which defines "improvement" to include *inter alia* "abutting sidewalks and streets"; and be-

cause (2) it is based upon debts to subcontractors which have not been paid. Even if we should agree with defendant that those items will not support plaintiff's lien, the defense is factually incomplete under the record and therefore will not support the summary judgment. The facts set forth above show that plaintiff merely used the amounts of those items in calculating the sum it would claim as its lien, and that its lien is not based solely thereon. Rather, plaintiff's lien is based upon the unpaid balance of its contract in the amount of $205,723.78. The deduction of the above items (now totaling $71,693.52) from the amount due plaintiff under the contract still leaves the balance of $134,030.26 upon which the lien is based. Defendant cannot claim invalidity merely because plaintiff chose to perfect its lien for $83,197.65, whatever the method of calculation. For this reason, we need not decide and do not decide whether Noel Road was an improvement within the statute.

■ Defendant also asserts that plaintiff's lien does not attach to the removals because those improvements were placed there by others, that is, by plaintiff's subcontractors; and that, in any event, plaintiff should not be permitted to foreclose its lien against the removals because it has not paid the subcontractors in full. The second contention assumes that the proof establishes as a matter of law that there are no removals within the project for which the suppliers and laborers have not been paid, but the record does not support that proposition. Consequently, if the contention were legally correct, it is based upon an unresolved fact question and for that reason alone would fail in this summary judgment case. However, for the reasons that follow, we hold that both contentions are unsound as a matter of law.

■ Article 5452 provides in part as follows:

"1. Any person or firm, lumber dealer or corporation, artisan, laborer, mechanic or subcontractor who may labor, specifically fabricate material, or furnish labor or material: (a) for the construction or

repair of any house, building or improvement whatever; . . . within this state under or by virtue of a contract with the owner, owners, or his or their agent, trustee, receiver, contractor, contractors, or with any subcontractor; upon complying with the provisions of this Chapter shall have a lien on such house, building, fixtures, improvements . . and shall have a lien on the lot or lots of land necessarily connected therewith . . . to secure payment: (a) for the labor done or material furnished or both for such construction or repair . . .

"2. For the purposes of this Act, the following definitions shall apply:

"a. Labor is to be construed to mean labor used in the direct prosecution of the work.

"b. The words 'material,' 'furnish material,' or 'material furnished' as used in this Act are to be construed to mean any part or all of the following:

"(1) Material, machinery, fixtures or tools incorporated in the work, or consumed in the direct prosecution of the work, or ordered and delivered for such incorporation or such consumption."

It is clear under the statute that a perfected mechanic's and materialman's lien extends to all of the improvements without regard to who placed them there. The cases so hold. See, *Wilson v. Hinton*, 131 Tex. 593, 116 S.W.2d 365, 367 (1938); *Wallace Gin Co. v. Burton-Lingo Co.*, 104 S.W.2d 891, 892 (Tex.Civ.App.—Austin 1937, no writ). Therefore, plaintiff's lien for labor and materials directly contributed by it would cover all of the improvements. Additionally, the labor and materials of plaintiff's subcontractors were actually furnished to First National by plaintiff under contract with plaintiff, and not by the subcontractors, and under the statute plaintiff's lien attached to the resulting improvements.

■ Finally, without detailing the statutes, we believe it is implicit in Articles 5453, 5454, 5463, and 5469 that the general contractor who through subcontractors makes improvements under contract with the owner is entitled to foreclose his lien on all of the improvements whether or not the subcontractors have been paid. The owner is not in contractual privity with the subcontractors, and he is not personally liable to them for their labor and materials. The original contractor is liable. If the subcontractors do not perfect their liens under the statutes, they may not look to the owner for payment, but the contractor remains liable to them. If the subcontractors do not perfect liens for payment and the contractor is not permitted a lien and its foreclosure on their improvements simply because they have not been paid, then the owner receives the improvements unencumbered by a lien for their payment, and the contractor may only look to the personal financial ability of the owner for funds for payment of the subcontractors. An interpretation of the statutes to that effect would encourage the owner not to pay the contractor for the improvements, penalize the contractor having financial difficulty resulting from the owner's failure to pay, and expose the contractor to lawsuits by his subcontractors (like those against plaintiff, here) and thus deny protection of the lien to the party most in need of it. On the other hand, allowing the contractor's lien to extend to the improvements (including removals) furnished by his unpaid subcontractors does not expose the owner (or his successor in interest) to an unwarranted risk of double liability. In the event of suit against the owner by a subcontractor with a perfected lien, the contractor must defend the suit at his own expense under the provisions of Article 5463, and the owner is granted protection against double payment under the statute. If the contractor brings the suit, the subcontractors may be brought in as additional parties under the provisions of Rule 39 Vernon's Tex.Civ.St. Under the provisions of Article 5472e, all funds paid to the contractor under his lien based on the improvements made by his subcontractors are trust funds held by him for the benefit of the subcontractors; and the contractor is subject to penal sanctions for a violation of the trust.

The judgment is reversed, and this case is remanded for trial.