**L & N CONSULTANTS, INC., Appellant,**

v.

**Richard H. SIKES, Appellee.**

**No. 05–82–00027–CV.**

Court of Appeals of Texas,
Dallas.

Feb. 28, 1983.

Robert T. Mowrey, Dallas, for appellant.

James K. Peden, III, J. Albert Kroemer, Dallas, for appellee.

Before GUITTARD, C.J., and SPARLING and FISH, JJ.

FISH, Justice.

The question presented on this appeal is whether the statutory mechanic's and mate-

rialmen's lien perfected by a general contractor is superior to a previously recorded deed of trust lien. We agree with the holding of the trial court that the contractor's mechanic's and materialmen's lien is entitled to preference upon the removable improvements on the property. Accordingly, we affirm.

Richard H. Sikes, Inc., the general contractor on a townhouse development, sued L & N Consultants, the successor in interest to the mortgage lender, to establish and foreclose a statutory mechanic's and materialmen's lien. L & N answered that Sikes' lien had been extinguished before suit by foreclosure of L & N's deed of trust lien. The trial court granted summary judgment for L & N but the Court of Civil Appeals reversed. *Richard H. Sikes, Inc. v. L & N Consultants, Inc.,* 586 S.W.2d 950 (Tex.Civ. App.—Waco 1979, writ ref'd n.r.e.). On remand, following a non-jury trial on stipulated facts, the court rendered judgment for Sikes in the principal amount of $38,-218.09.[1]

L & N contends that the latter judgment was erroneous for three reasons: first, because Sikes' mechanic's lien was not superior to L & N's deed of trust lien; second, because Sikes had not paid the subcontractors who actually furnished the removable improvements on which Sikes' lien was claimed; and third, because no indebtedness for removable improvements existed when Sikes' lien was filed. A summary of the stipulations in our record will help to put these contentions into proper focus.

### The Stipulated Facts

On August 25, 1972, First National Development Company borrowed approximately $2.3 million from Lomas and Nettleton Financial Corporation to acquire almost 35 acres of land for a townhouse development. To evidence this indebtedness, First National gave Lomas & Nettleton a note and deed of trust, which was recorded on August 28.

Also on August 25, First National signed a construction contract under which Sikes was to build 36 townhomes and related improvements on this land. Sikes commenced construction the following November.

In November, 1973, First National obtained a $1.7 million loan from Lomas & Nettleton to provide construction financing for the 36 townhomes. $369,000 of this amount was applied to payment of the 1972 loan. As part of the same transaction, the 36 lots on which Sikes was to construct townhomes were released from the lien of the 1972 deed of trust but subjected to a new deed of trust, in favor of Lomas & Nettleton, securing the 1973 loan.

Sikes substantially completed construction in August, 1975. The next month Sikes filed a mechanic's lien affidavit stating that it had not been paid $83,197.55 for improvements to the subject property. A few days later, Lomas & Nettleton assigned to L & N its interest in the 1972 and 1973 notes, on which First National was in default, as well as its interest in the liens securing those notes. Under the power of private sale in the deeds of trust, L & N purchased the property at foreclosure on October 7, 1975.

At the time construction was substantially complete, Sikes still owed its subcontractors $38,318.09, for which Sikes had not been paid by First National. Of this amount, $19,728.57 was for removable improvements and $18,489.52 for nonremovable improvements. After filing its mechanic's lien affidavit, Sikes paid its subcontractors part of the money owed them and executed notes for the balance.

The total value of removable improvements on the property was $69,646.76. All of these improvements, which were furnished by Sikes' subcontractors under the construction contract, can be removed from the property without injury to the land, to the remaining improvements, or to the improvements removed.

---

1. To eliminate the necessity of joining subsequent owners as parties to this action, L & N stipulated that it would pay the amount of money due Sikes under its construction contract, to the extent that such indebtedness was secured by a valid mechanic's and materialman's lien superior to L & N's interest in the property.

*Contractor or Mortgage Lender: Whose Lien is Superior?*

The lien claimed by Sikes is based upon Tex.Rev.Civ.Stat. Art. 5452(1) (Vernon Supp.1982–1983), which provides:

Any . . . corporation . . . [which] may labor, specially fabricate material, or furnish labor or material: (a) for the construction or repair of any house, building or improvement whatever . . . shall have a lien on such house, building, fixtures, improvements . . . to secure payment: . . . (b) for the labor done or material furnished or both for such construction or repair.

The scope of the lien, and the method of enforcing it, is set forth in Tex.Rev.Civ. Stat. Art. 5459 § 1 (Vernon Supp.1982–1983):

The lien herein provided for shall attach to the house, building, [or] improvements . . . for which they were furnished or the work was done, *in preference to any prior lien or encumbrance or mortgage* upon the land upon which the houses, buildings or improvements . . . have been put, and the person enforcing the same may have such house, building or improvement . . . sold separately . . . [emphasis added].

These statutes were authoritatively construed in *First National Bank v. Whirlpool Corp.,* 517 S.W.2d 262, 269 (Tex.1974), in which the Supreme Court held:

[A] mechanic's and materialman's statutory lien upon improvements made is superior to a prior recorded deed of trust lien where the improvements can be removed without material injury to the land and pre-existing improvements, or to the improvements removed.

L & N does not challenge this rule but seeks to avoid the effect of it in this case by arguing that a mechanic's lien on removable improvements is superior to a prior recorded deed of trust only if the lien claimant shows a right to fix his lien on the specific improvements upon which the lien was claimed. L & N asserts that a line of cases, from *Cisco Banking Co. v. Keystone Pipe & Supply Co.,* 277 S.W. 1060 (Tex.Comm.App. 1925, judgment adopted), *McCallen v. Mog-*

*ul Producing & Refining Co.,* 257 S.W. 918 (Tex.Civ.App.—Galveston 1923, writ dism'd), *First National Bank v. Whirlpool Corporation,* 502 S.W.2d 185 (Tex.Civ.App. —Waco 1973), *rev'd,* 517 S.W.2d 262 (Tex. 1974), to *Kaspar v. Cockrell-Riggins Lighting Co.,* 511 S.W.2d 109 (Tex.Civ.App.— Eastland 1974, no writ), requires a lien claimant to identify and segregate the specific removable improvements on which he claims a lien. L & N argues that, under these cases, Sikes' inability to show specific removable improvements for which payment had not been received is fatal to Sikes' mechanic's lien claim. Thus, reasons L & N, the trial court erred in granting Sikes recovery for the *entire* amount it was owed at the time construction was substantially complete ($38,218.98) when removable improvements not then paid for totalled only $19,728.57. Excusing Sikes from making the identification required by these cases will, according to L & N, enable Sikes to be paid a second time for some of the removable improvements or, stated another way, allow Sikes to recover, by enforcement of the mechanic's lien involved here, that portion of its debt attributable to non-removable improvements ($18,489.52), despite the fact that Article 5459 makes a mechanic's lien superior to a deed of trust lien only as to removable improvements.

Sikes responds that the mechanic's lien statutes set forth above indicate in plain language that the lien extends to *all* removable improvements, whether furnished by the lienholder or not, citing *Parkdale State Bank v. McCord,* 428 S.W.2d 121 (Tex.Civ.App.—Corpus Christi 1968, writ ref'd n.r.e.), *Freed v. Bozman,* 304 S.W.2d 235 (Tex.Civ.App.—Texarkana 1957, writ ref'd n.r.e.), and *Wallace Gin Co. v. Burton-Lingo Co.,* 104 S.W.2d 891 (Tex.Civ.App.— Austin 1937, no writ). Accepting L & N's argument would, according to Sikes, confuse the debt secured by a mechanic's lien with the property to which the lien attaches. The correct rule, Sikes argues, allows a mechanic's lien claimant to recover the entire amount of his debt up to the total value of the removable improvements.

Application of that rule to this case would require an affirmance, since the total value of removable improvements here was $69,-646.76, well in excess of Sikes' judgment for $38,218.09. In any event, Sikes urges that identification of the specific removable improvements it furnished is not required here because *all* improvements on this property were furnished under Sikes' construction contract with the owner and that its lien extends to all of the removables furnished under that contract, whether or not it has been paid for a part of them.

Although the question concerning the effect of an owner's prior payment for removable improvements in a subsequent dispute between the mechanic's lien claimant and the mortgage lender was raised in *Whirlpool,* the Supreme Court disposed of the issue on a pleading point without addressing the merits. 517 S.W.2d at 269. In the course of its discussion, however, the court noted the importance of liberally construing the mechanic's and materialman's lien statutes in such a way as to protect laborers and materialman. *Id.* Mindful of that admonition, we are persuaded that Sikes' interpretation of those lien statutes, as applied to the present facts, is correct.

To the extent that the cases cited by L & N require that a materialman claiming a statutory lien must be able to identify and segregate the materials he furnished, we believe they are distinguishable from the situation presented here. In those cases, recovery was denied to the lien claimant, who was one of several suppliers of materials, because he was unable to identify the specific materials he furnished. Here, by contrast, all materials and labor were furnished by Sikes, the general contractor, under its construction contract with the owner. *See Richard H. Sikes, Inc.,* 586 S.W.2d at 956; *cf. In Matter of Jamail,* 609 F.2d 1387, 1390–91 (5th Cir.1980), noted in *Heath,* New Developments in Real Estate Financing, 12 St. Mary's L.J. 860–61 (1981).

We see no inconsistency between *Wallace Gin Co. v. Burton-Lingo Co.,* 104 S.W.2d 891 (Tex.Civ.App.—Austin 1937, no writ) and such cases as *Houk Air Conditioning, Inc. v. Mortgage & Trust, Inc.,* 517 S.W.2d 593 (Tex.Civ.App.—Waco 1974, no writ) and *Kaspar v. Cockrell-Riggins Lighting Co.,* 511 S.W.2d 109 (Tex.Civ.App.—El Paso 1974, no writ), holding that the statutes do not give a claimant a lien on removable items furnished by others under separate contracts. As we construe articles 5452(1) and 5459 § 1, they do not limit the amount of a contractor's lien to that portion of the contract price that may be allocated to removables; rather, they give him a preference lien on the removables furnished under his contract, and for which he is responsible, for the entire amount due him for the materials and labor furnished by him under that contract, even though some of the items furnished are not removable. *See Wallace Gin,* 104 S.W.2d at 892. We conclude, therefore, that the trial court was correct in determining Sikes' mechanic's and materialman's lien to be superior to L & N's deed of trust lien.

### *Did the Contractor Pay Its Subcontractors?*

L & N also challenges Sikes' right to recover on the ground that Sikes did not pay its subcontractors. L & N argues that, under the construction contract, First National was obligated to reimburse Sikes only for the cost of labor and materials incurred and paid by Sikes. Since Sikes gave promissory notes, rather than cash, to its subcontractors, L & N maintains that Sikes did not "pay" for the subcontractors' labor and materials and thus had no contractual right to reimbursement.[2] The cases relied on by L & N in support of this argument, *Page v. Superior Stone Products, Inc.,* 412 S.W.2d 660 (Tex.Civ.App.—Austin 1967, writ ref'd n.r.e.) and *Longhorn Flying Club, Inc. v. Dragoo,* 464 S.W.2d 189 (Tex.Civ.App.—Austin 1971, writ ref'd n.r.e.) stand for the

2. The parties stipulated that Sikes paid its subcontractors $22,699.10 in cash and delivered notes to them totalling $15,518.99, on which payments aggregating $5,865.40 had been made at the time of the stipulation. On that date, Sikes had thus paid its subcontractors $28,-564.60 in cash, with a remaining balance on the notes of $9,653.49.

proposition that, as between debtor and creditor, a note will not constitute payment unless both parties so intend. We see no reason to extend the rule of those cases to enable third parties, such as L & N, to challenge the effectiveness of the notes as payment.

Even if we were to hold that the notes given by Sikes to its subcontractors did not constitute payment, we agree with the Waco Court of Civil Appeals in its discussion of this issue on the prior appeal, that such non-payment should not defeat Sikes' lien claim:

> [I]f the subcontractors do not perfect liens for payment and the contractor is not permitted a lien and its foreclosure on their improvements *simply because they have not been paid,* then the owner receives the improvements unencumbered by a lien for their payment, and the contractor may only look to the personal financial ability of the owner for funds for payment of the subcontractors. An interpretation of the [mechanic's and materialman's lien] statutes to that effect would encourage the owner not to pay the contractor for the improvements, penalize the contractor having financial difficulty resulting from the owner's failure to pay, and expose the contractor to lawsuits by his subcontractors ... thus denying protection of the lien to the party most in need of it [emphasis added].

*Richard H. Sikes, Inc.,* 586 S.W.2d at 956.

### *Did Sikes File Its Lien Affidavit Before The Indebtedness Accrued?*

 Finally, L & N contends that the mechanic's lien statutes do not permit a lien to be claimed until the indebtedness accrues. Since Sikes' lien affidavit was filed before Sikes paid its subcontractors any sums for removable improvements, L & N urges that no indebtedness in favor of Sikes had accrued at that time. Thus, L & N maintains, no indebtedness existed at the time of filing Sikes' lien affidavit which a mechanic's and materialman's lien could secure.

Tex.Rev.Civ.Stat. art. 5453 (Vernon Supp. 1982–1983) requires that:

> 1. Every original contractor, not later than one hundred twenty (120) days ... after the indebtedness accrues as defined hereinafter in Article 5467, shall file his affidavit claiming a lien ...

Tex.Rev.Civ.Stat. art. 5467 (Vernon Supp. 1982–1983) provides:

> 3. Accrual of indebtedness shall be referable, as to any given claim, to the contract concerning which the particular claim is made ....

In our opinion, the restrictive interpretation of these statutes urged here by L & N would be inconsistent with the policy of liberally construing them to protect laborers and materialmen, and we therefore decline to adopt it. The statutes require only, in the language quoted, that the lien affidavit be filed *no later than* the date specified; they do not prescribe a time *before which* filing will be ineffective. We are not inclined to impose such a requirement when the statutes do not.

Affirmed.