GILL SAVINGS
ASSOCIATION, Appellant,

v.

INTERNATIONAL SUPPLY
COMPANY, INC., Appellee.

No. 05-87-01007-CV.

Court of Appeals of Texas,
Dallas.

Aug. 11, 1988.
Rehearing Denied Sept. 2, 1988.

Paul T. Curl, San Antonio, for appellant.

Martin J. Lehman, David A. Miller, Dallas, for appellee.

Before WHITHAM, ROWE and THOMAS, JJ.

THOMAS, Justice.

Appellee, International Supply Company, Inc., instituted this action seeking the establishment and foreclosure of its statutory mechanic's and materialman's lien against property owned by appellant, Gill Savings Association. After the trial court granted judgment in favor of International, Gill brought this appeal complaining generally in four points of error that the trial court erred: 1) in ruling the mechanic's and materialman's lien to be valid; 2) in holding that International had proved the amount of its claim; 3) in awarding attorney's fees

to International; and 4) in not awarding attorney's fees to Gill. For the reasons given below, we affirm the trial court's judgment except for the award of attorney's fees, which we reverse. We sever International's cause of action for attorney's fees and remand same to the trial court for determination of the reasonable amount of attorney's fees, if any, that International should recover from Gill.

## FACTUAL BACKGROUND

Gentry Place, Ltd., a limited partnership, owned and constructed the Gentry Place Apartments. Gill held a first lien on the project as the construction lender. H & M, Ltd., the original contractor and a general partner of Gentry Place Ltd., entered into a contract with T.P. Mechanical, whereby T.P. Mechanical agreed to provide a complete plumbing system throughout the project which included the obligation to furnish and install all of the plumbing fixtures. T.P. Mechanical purchased the majority of the plumbing supplies, including such items as lavatories, water heaters, bar sinks and toilets, from International.

In order to perfect its lien to secure payment, International filed its mechanic's and materialmen's lien affidavit on June 21, 1985. Unable to collect the money which it was owed, International filed this suit on January 31, 1986, naming as defendants Gentry Place, Ltd., Martin K. Eby Construction, T.P. Mechanical, and Gill.[1] On or about October 7, 1986, Gill foreclosed its first lien on Gentry Place and purchased the apartments at the foreclosure sale.

## VALIDITY OF THE LIEN

In the first point of error, Gill argues that the trial court erred in finding that International had a valid mechanic's and materialman's lien because the lien affida-

---

**1.** International also obtained judgments against Gentry Place, Ltd., Martin K. Eby Construction (the general contractor), and T.P. Mechanical. Those judgments have not been appealed.

**2.** *Energy Fund* involved several parties and Energy Fund itself did not take part in further appeal of the case to the Texas Supreme Court. *Ayco,* 616 S.W.2d 185. Thus, the Texas Supreme Court did not consider the Eastland Court's rul-

vit: (a) was signed by the attorney; (b) stated an amount far in excess of what was owed; and (c) included charges for items beyond the applicable notice and filing deadlines.

A. *International's attorney signed the lien affidavit without having personal knowledge of the matters stated in the affidavit.*

■ In urging that the lien affidavit is void because it was signed by International's attorney, Gill argues that the holding in *Energy Fund of America, Inc. v. G.E.T. Service Co.,* 610 S.W.2d 833 (Tex.Civ.App.—Eastland 1980), *rev'd on other grounds sub nom. Ayco Development Corp. v. G.E. T. Service Co.,* 616 S.W.2d 184 (Tex.1981), is erroneous.[2] We disagree with Gill's arguments and hold that the mere fact that International's attorney signed the lien affidavit does not invalidate the lien for removables.

The Texas Property Code requires that the materialman's lien affidavit "must be signed by the person claiming the lien or by another person on the claimant's behalf...." TEX.PROP.CODE ANN. § 53.054(a) (Vernon 1984). Section 53.054 sets out the contents required to be in a lien affidavit but does not specifically state whether such affidavit must be made on the personal knowledge of the one who signs it. Corporations, such as International, can act only through persons,[3] and it is undisputed that International designated its attorney, Martin Lehman, as being duly authorized to represent it for purposes of signing the lien affidavit.

In International's lien affidavit, the affiant Lehman states that he is "duly qualified and authorized to make [the] affidavit," and that he is acting as the "autho-

---

ing on the propriety of an attorney signing a lien affidavit containing statements of which he has no personal knowledge.

**3.** *See Henry S. Miller Co. v. Treo Enterprises,* 573 S.W.2d 553, 555 (Tex.Civ.App.—Texarkana 1978), *aff'd,* 585 S.W.2d 674 (Tex.1979) (suit to recover balance due on promissory note representing a broker's commission on the sale of real estate).

rized representative" for International. The record demonstrates that Lehman's law firm had represented International for at least five years. John Vogt, the president of International, testified that Lehman prepared the·lien affidavit at his [Vogt's] direction, that International authorized Lehman to sign the lien affidavit on its behalf, and that International had provided Lehman with various records prepared in the regular course of business prior to the time the affidavit was signed.

Because the property code contains no affirmative personal knowledge requirement, and because the record which reveals that Lehman had the means to, and could have become personally informed, as desired by Gill, we hold that the execution of the lien affidavit by International's attorney does not render it invalid. *See Energy Fund,* 610 S.W.2d 836–37; *Henry S. Miller Co.,* 573 S.W.2d at 555 (corporations can only act through persons); *Gex v. Texas Company,* 337 S.W.2d 820, 828 (Tex.Civ. App.—Amarillo 1960, writ ref'd n.r.e.) (the affiant-attorney swore in the affidavit that he was duly authorized to make the affidavit, had read the motion, knew its contents, and knew that the facts therein were true and correct).

#### B. *International's lien affidavit stated an amount far in excess of what it was owed.*

Section 53.054(a)(1) of the property code requires that the lien claimant file "a sworn statement of the claim, including the amount." Vogt testified that the $75,-986.03 amount in International's lien affidavit, filed on June 21, 1985, failed to take into account a $15,678.00 credit received by International in early May, 1985, which credit was not applied to the account until sometime in August, 1985. An additional correction of approximately $3,000.00 was also made. Vogt admitted that the amount shown in the lien affidavit was incorrect; however, he testified at trial that the account had since been reconciled and that the sum due and owing amounted to $57,-365.32 after all credits and corrections.

Gill asserts that "[i]t is not unreasonable for the law to require that amount be correct, or at least much closer to correct than the amount stated in International's affidavit." Gill does not elaborate further on this complaint and neither party cited any authority beyond the statute itself. The statute, however, aids little in solving the issue of whether a lien affidavit that states more than the amount actually owed invalidates the lien. We hold that it does not.

Gill, as lender on the project, purchased and became the owner of Gentry Place through a foreclosure sale in October 1986, over one year after International filed its lien affidavit and over seven months after Gill made its appearance in this law suit. Further, Thomas Shockey, a vice-president of Gill, testified that when Gill bought Gentry Place, Gill knew International was claiming a lien. It is clear that Gill was in no way a third party stranger in its purchase of Gentry Place, and notwithstanding this fact, it is also clear that the discrepancy in amounts in no way harmed Gill, and Gill is actually in a better position than expected since the lien against Gentry Place is less than the amount that Gill believed it to be at the time it foreclosed on and bought the project.

We hold that under the facts of this case, International's lien affidavit was in substantial compliance with the property code statute when it filed its lien for an amount greater than the actual amount reconciled by the time of trial two years later. *See First National Bank in Graham v. Sledge,* 653 S.W.2d 283, 285 (Tex.1983) (a subcontractor's lien rights are totally dependent on compliance with the statutes authorizing the lien; however, substantial compliance is sufficient to perfect a lien); *see also and compare Mathews Construction Company, Inc. v. Jasper Housing Construction,* 528 S.W.2d 323, 329 (Tex. Civ.App.—Beaumont 1975, writ ref'd n.r.e.) (holding that a "general statement" of the total price in lump sum is in substantial compliance with mechanic's and materialmen's lien statutes).

C. *International's lien affidavit included charges for items supplied to Gentry Place beyond the applicable notice and filing deadlines.*

Gill's third argument is that the affidavit is invalid because International failed to timely perfect its lien claim as required by Section 53.056(b) of the Texas Property Code. Since the lien affidavit contained charges for materials delivered to Gentry Place in February 1985, Gill complains that the notices to the owner (dated June 20, 1985) and general contractor (dated May 13, 1985) were not timely. *See* TEX.PROP. CODE ANN. § 53.056(b) (Vernon 1984). Gill further contends that International did not timely file its lien affidavit. *See* TEX. PROP.CODE ANN. § 53.052(c) (Vernon 1984).

■ International, on the other hand, claims that under Texas Rule of Civil Procedure 54, it was not required to offer any proof that it gave 36–day and 90–day notices of its claim for materials furnished during February 1985. Both International's Original Petition and First Amended Petition plead that "all conditions precedent to Defendants' liability and the foreclosure of International's lien have been performed or have occurred."

International contends that its pleadings are in accordance with Rule 54, which provides as follows:

In pleading the performance or occurrence of conditions precedent, it shall be sufficient to aver generally that all conditions precedent have been performed or have occurred. When such performances or occurrences have been so plead, the party so pleading the same shall be required to prove only such of them as are *specifically* denied by the opposite party.

(Emphasis added.) The record shows that Gill did not specifically deny that International failed to give a 36–day notice to the original contractor or a 90–day notice to the owner for the materials delivered in February, 1985. Thus, we agree with International that it was not required to offer independent proof of having given the notices.

■ Rule 54 is applicable to notices required to be given in connection with mechanic's and materialmen's lien claims. *Sunbelt Constr. Corp. v. S & D Mechanical Contractors, Inc.*, 668 S.W.2d 415, 417–18 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.); *Skinny's, Inc. v. Hicks Brothers Construction of Abilene, Inc.*, 602 S.W.2d 85, 90 (Tex.Civ.App.—Eastland 1980, no writ) (subcontractor required to prove only such conditions precedent as were specifically denied by owner, distinguishing and rejecting *Bunch Electric Co. v. Tex–Craft Builders, Inc.*, 480 S.W.2d 42, 46 (Tex.Civ.App.—Tyler 1972, no writ)); *Continental Contractors, Inc., v. Thorup*, 578 S.W.2d 864, 866–67 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ) (plaintiff not required to offer independent proof that he had given the required notice if plaintiff plead all relevant conditions precedent, also distinguishing and explaining *Bunch Electric* holding); *Yeager Electric & Plumbing Co. v. Ingleside Cove Lumber and Builders, Inc.*, 526 S.W.2d 738, 739–40 (Tex.Civ.App.—Corpus Christi 1975, no writ); *see also Investors, Inc. v. Hadley*, 738 S.W.2d 737, 741–42 (Tex.App.—Austin 1987, writ denied) (applying Rule 54 to the notice provisions of the Texas Deceptive Trade Practices Act, *citing, Skinny's Inc., Continental Contractors, Inc.,* and *Yeager Electric & Plumbing Company, Inc.*).

Since Gill failed to specifically deny that International failed to give a 36–day notice to the original contractor and a 90–day notice to the owner for materials delivered in February 1985, International was not required, pursuant to Rule 54, to offer independent proof of having given the required notices. Gill has thereby waived its right to complain of any such failure on appeal. *Sunbelt Construction*, 668 S.W. 2d at 418.

■ The mechanic's and materialmen's lien statutes are to be liberally construed for the purpose of protecting laborers and materialmen. *Industrial Indemnity Co. v. Zack Burkett Co.*, 677 S.W.2d 493, 495 (Tex.1984). Moreover, the Texas Supreme Court has held that substantial compliance with statutes authorizing a subcontractor's

lien is sufficient to perfect a lien. *First National Bank v. Sledge*, 653 S.W.2d at 285 (Tex.1983). Having found no merit in any of the three reasons offered by Gill to invalidate the lien, we hold that International's affidavit was in substantial compliance with the statutory requirements, and it therefore secured a valid lien. The first point of error is overruled.

### PROOF OF AMOUNT OF CLAIM

■ Gill's second point of error complains that the trial court erred in finding that International proved the amount of its claim. The essence of Gill's point of error is that International failed to establish the value of the plumbing materials it sought to remove *as of the date of trial*. We hold that proof of the value of the plumbing materials as of the date of trial is not an essential element of International's claim.

International is required to prove at trial *the amount* of its claim. *See* TEX.PROP. CODE ANN. § 53.054(a)(1) and discussion under point of error number one, *supra.* The record reveals through the testimony and exhibits that International made its proof, with the trial court finding that the principal unpaid balance owed to International as of the date of the trial was $57,-365.32. The value of the removables as of the date of trial is irrelevant because the only manner in which the lien can be foreclosed is through a judicial foreclosure sale. TEX.PROP.CODE ANN. § 53.154 (Vernon 1984) ("A mechanic's lien may be foreclosed only on judgment of a court of competent jurisdiction foreclosing the lien and ordering the sale of the property subject to the lien."); *Exchange Savings v. Monocrete*, 629 S.W.2d 34, 38 (Tex.1982); *see Summerville v. King*, 98 Tex. 332, 339, 83 S.W. 680, 682 (Tex.1904).

Gill's reliance on this Court's case of *L & N Consultants, Inc. v. Sikes*, 648 S.W.2d 368 (Tex.App.—Dallas 1983, writ ref'd n.r.e.) is misplaced. In *Sikes*, this Court agreed with the contractor's contention that a mechanic's lien claimant is allowed to "recover the entire amount of his debt up to the total value of the removable improvements." *Sikes*, 648 S.W.2d at 370–

71. That rule is correct (and was properly applied under the facts of that case), and it is not in conflict with the rule that the lien claimant's sole remedy is to have the removable items removed and sold through a judicial proceeding. *See* TEX.PROP.CODE ANN. § 53.154 (Vernon 1984). Accordingly, Gill's second point of error is overruled.

### ATTORNEY'S FEES AWARDED TO INTERNATIONAL

■ Gill's third point of error is "the trial court erred in awarding attorney's fees to International." As a part of this assignment of error, Gill argues that (a) the award includes charges for legal assistant time, and (b) International failed to apportion its fees between its claims against T.P. Mechanical and Gill. For the reasons stated below, we overrule Gill's argument that, as a matter of law, a legal assistant's time is not includable as a part of an attorney's fees award. In this connection, we hold that compensation for a legal assistant's work may be separately assessed and included in the award of attorney's fees if a legal assistant performs work that has traditionally been done by any attorney. However, in order to recover such amounts, the evidence must establish: (1) that the legal assistant is qualified through education, training or work experience to perform substantive legal work; (2) that substantive legal work was performed under the direction and supervision of an attorney; (3) the nature of the legal work which was performed; (4) the hourly rate being charged for the legal assistant; and (5) the number of hours expended by the legal assistant. To the extent, however, that Gill argues that the evidence concerning the work performed by the legal assistants is legally insufficient to support the award, we sustain the point of error and reverse the trial court's judgment. Lastly, for the reasons stated below, we overrule the challenge concerning International's failure to apportion between Gill and T.P. Mechanical.

### A. Legal Assistant's Time

We have not been cited to any Texas state court decisions, nor have we found a

decision which has dealt with the question of whether the value of legal work performed by legal assistants may be recovered as an element of attorney's fees.

The ever-increasing use of legal assistants by attorneys is recognized by the Texas legal community. In order to better define what legal assistants are and the general perimeters within which their services may be used, the Board of Directors of the State Bar of Texas has approved the General Guidelines for the Utilization of the Services of Legal Assistants by Attorneys. The Guidelines contain the following preliminary statement:

> Providing legal services to the public at an affordable price without reduction in the quality of services finds ample support in the purpose clause of the State Bar Act as well as in the Code of Professional Responsibility. It is a goal toward which the Bar is committed, both in principle and in practice. The utilization by attorneys of the services of legal assistants is recognized as one means by which the Bar may attain this goal. With direction and supervision by an attorney, legal assistants can perform a wide variety of tasks which may neither constitute the unauthorized practice of law nor require the traditional exercise of an attorney's training, experience, knowledge or professional judgment.

While the day-to-day duties of a legal assistant will vary from law firm to law firm, it is recognized that the legal assistant will perform work that has traditionally been done by an attorney, and the Guidelines so provide:

> A legal assistant is a person not admitted to the practice of law in Texas but ultimately subject to the definition of "the practice of law" as set forth in the law of the State of Texas, who has, through education, training and experience, demonstrated knowledge of the legal system, legal principles and procedures, and who uses such knowledge in rendering paralegal assistance to an attorney in the representation of that attorney's clients. The attorney is responsible for the work of the legal assistant and the legal assist-

ant remains, at all times, responsible to and under the supervision and direction of the attorney. The functions of a legal assistant are defined by the attorney responsible for the legal assistant's supervision and direction, and are limited only to the extent that they are limited by law.

We note further that General Guideline V states:

> An attorney may charge and bill a client for a legal assistant's time, but the attorney may not share legal fees with a legal assistant under his or her supervision and direction.

In this action, International's right to recover attorney's fees arises from section 53.156(a) of the Texas Property Code, which provides:

> If the lien provided under Section 53.021 is not paid before the 181st day the lien is fixed and secured under this Chapter, the claimant or owner of the lien is entitled to recover all reasonable costs of collection, including attorney's fees.

TEX.PROP.CODE ANN. § 53.156(a) (Vernon 1984). Thus, once International secured a lien under the Code, section 53.156 entitled it to recover the reasonable sums it had to expend in collecting upon the lien, including attorney's fees. Gill is correct in its assertion that the statute uses only the words "attorney's fees" and does not state "legal assistants' fees." For the reasons given below, though, we do not read the statute to preclude recovery for legal work properly performed by legal assistants.

In *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), the court established a twelve point test for determining what factors are necessary to ascertain reasonable attorney's fees, where such fees are allowed by federal law. These factors are: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. We note that this is consistent with the factors set out in Disciplinary Rule 2–106(B) of the Texas Code of Professional Responsibility.

Inasmuch as one of the elements is the time and labor required, we must look to the reasonableness of the labor and time expended in a case. Properly employed and supervised legal assistants can decrease litigation expense and improve an attorney's efficiency. As pointed out by one of our sister states, justice would not be served by requiring attorneys to perform tasks more properly performed by legal assistants solely to permit that time to be compensable in the event that a request for attorney's fees is ultimately submitted to the court. *See Continental Townhouses East v. Brockbank*, 733 P.2d 1120, 1126–27 (Ariz.App.1986). Indeed, the Guidelines suggest the inclusion of legal assistant services. Further, the purpose and objective of our legal system is to provide the most equitable, efficient adjudication of litigation at the least expense practicable. *See* TEX.R.CIV.P. 1. Likewise, as is suggested by the Guidelines, legal assistant charges are an appropriate component of attorney's fees since an attorney would have to have performed the services if a legal assistant had not been used.

While the courts differ in their treatment of the time spent by non-lawyers in structuring fee awards, we note that our holding that work performed by legal assistants is compensable under statutes authorizing attorney's fees awards is supported by various federal court decisions. In *Jones v. Armstrong Cork Co.*, 630 F.2d 324 (5th Cir.1980), a civil rights action under 42 U.S.C.A. § 2000e–5(k), the district court's order denied the plaintiff's attorney's request for compensation for the work hours of Ethel Smith. In affirming the trial court's conclusion that it had not been established that Smith was a "paralegal," the court noted:

> Had Ms. Smith been a paralegal, then to the extent that she performed work that has traditionally been done by an attorney, Ms. Turner [plaintiff's attorney] would have been entitled to have compensation for that work separately assessed and included in her award.

630 F.2d at 325 (citations omitted). *See also Richardson v. Byrd*, 709 F.2d 1016, 1023 (5th Cir.), *cert. denied*, 464 U.S. 1009, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983) (award of attorneys' fees to paralegals who performed work traditionally performed by attorneys was not error under 42 U.S.C.A. § 2000e); *Alter Financial Corp. v. Citizens & Southern International Bank*, 817 F.2d 349, 350 (5th Cir.1987) (award of attorney's fees properly included an assessment for work done by paralegals and a law clerk under 28 U.S.C.A. § 1927); *Jacobs v. Mancuso*, 825 F.2d 559 (1st Cir.1987) (in calculation of attorney's fee award under 42 U.S.C.A. § 1983, the use of paralegals should be encouraged by separate compensation and should not be considered part of the overhead included in counsel's fee); *Garmong v. Montgomery County*, 668 F.Supp. 1000, 1011 (S.D.Tex.1987) (award of attorney's fees allowed under 42 U.S.C.A. § 1988 to paraprofessional whose work replaced an attorney's efforts); *Zacharias v. Shell Oil Co.*, 627 F.Supp. 31, 34 (E.D.N.Y.1984) (defendant's inclusion of fees for paralegals in its request for reasonable fees under the Petroleum Marketing Practices Act 15 U.S.C.A. § 2805(d)(3) was proper); *Selzer v. Berkowitz*, 477 F.Supp. 686, 690–91 (E.D.N.Y.1979) (award of attorney's fees included charges for paralegals and such was reasonable in civil rights suit under 42 U.S.C.A. § 1988); *Entin v. Barg*, 412 F.Supp. 508, 519 (E.D.Pa.1976) (value of paralegal time computed on their normal hourly billing rate in case under the Securities Exchange Act of 1934 was allowable as a part of the attorney's fees).

The state courts have been divided on this issue. We note, however, that a growing number of our sister states have allowed recovery of "legal assistant" time in attorney's fee awards. *See Continental*

*Townhouses East v. Brockbank,* 733 P.2d at 1127; *Aries v. Palmer Johnson, Inc.,* 735 P.2d 1373, 1384 (Ariz.App.1987) (value of legal work performed by legal assistants could be recovered as element of attorney fees under statute allowing award of attorney fees). *See also Williamette Prod. Credit v. Borg–Warner Acc.,* 706 P.2d 577, 580 (Or.App.1985) (in an action to foreclose livestock fee lien, charges for legal assistant time was properly considered in determining attorney fees); *In Re Marriage of Thornton,* 412 N.E.2d 1336, 1349 (Ill.App. 1980) (services of a paralegal can be considered in determining a reasonable fee in a divorce action).

Having determined that a legal assistant's time is properly includable in an attorney's fee award under certain conditions, we turn to Gill's alternative argument that International did not put on the necessary proof to substantiate the award. Specifically, it is contended that there is no evidence regarding: 1) the specific tasks which were performed by the legal assistants; 2) the identity of all of the persons performing the various tasks; and 3) the charge for the legal assistant's work. Although not characterized as such, we will treat this as an assertion that the evidence is legally insufficient to support the award for legal assistant's services.

■ A "legally insufficient" point is a "no evidence" point presenting a question of law. In deciding that question, we must consider only the evidence and the inferences tending to support the finding and disregard all evidence and inferences to the contrary. If a "no evidence" point is sustained and the proper procedural steps have been taken, the finding under attack may be disregarded entirely and judgment rendered for the appellant unless the interest of justice requires another trial. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). In reviewing "factually insufficient evidence" points we consider all of the evidence, including any evidence contrary to the judgment. *Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex.1980). Applying these principles, we must determine if there is evidence of probative value to support the trial court's finding. It is fundamental that the finding must be upheld by this court if there is more than a scintilla of evidence in support thereof. *Stedman v. Georgetown Savings and Loan Association,* 595 S.W.2d 486, 488 (Tex.1979).

■ Utilizing these principles, we examine the evidence presented by International in support of its request for attorney's fees. Copies of the monthly fee statements which were submitted to International by its counsel were admitted into evidence without objection. The following information is reflected on the statements: (1) the date the service was rendered; (2) a brief description of the work that was performed; (3) the time spent performing the particular task; (4) the initials of the person performing the work; and (5) the total amount due as a result of the services which were rendered. The testimony reflected that at least two of the sets of initials represent two of the attorneys who worked on the case and one of the sets of initials represents a "legal assistant." The testimony and exhibits however do not provide any help in determining: (1) the qualifications, if any, of the legal assistants; (2) whether the tasks performed by the legal assistants were of a substantive legal nature or were the performance of clerical duties; and (3) the hourly rate being charged for the legal assistant. Further, without the benefit of additional testimony identifying the different sets of initials, it is impossible to determine which class of professional is performing which task. Therefore, we hold that the evidence concerning the work performed by the legal assistants is legally insufficient to support the award. We sustain that portion of Gill's point of error complaining of the legal sufficiency of the evidence to support the attorney's fees award.

### B.  Failure to Apportion Fees Between Claims

■ We find no error in International's failure to segregate the attorney's fees expended in its claim against T.P. Mechanical and its claim against Gill "since the claims arise out of the same transaction and are

so interrelated that their prosecution or defense entails proof or denial of essentially the same facts." *See Flint & Associates v. Intercontinental Pipe & Steel, Inc.,* 739 S.W.2d 622 (Tex.App.—Dallas 1987, writ denied).

## ATTORNEY'S FEES TO GILL

In the final point of error, Gill complains that the trial court erred in not awarding it attorney's fees. Gill's right to recover attorney's fees arises from Section 53.156(b) which provides:

> If a claim for a lien provided under Section 53.021 *is not valid or enforceable* because of the failure to fix or secure the lien under this Chapter or for any other reason, the owner ... is entitled to recover *from the claimant all reasonable costs of defending against the lien claim,* including attorney's fees.

TEX.PROP.CODE ANN. § 53.156(b) (Vernon 1984) (emphasis added). In view of the determination that International's lien claim is valid and enforceable, Gill is not entitled to recover its attorney's fees or costs in defending this suit, and the fourth point of error is overruled.

## DISPOSITION

We affirm the trial court's judgment except as to the award of attorney's fees. We reverse the judgment insofar as it awards attorney's fees to International. Having prevailed on its "no evidence" point as to attorney's fees, Gill would ordinarily be entitled to the rendition of judgment in its favor. *National Life and Accident Ins. Co. v. Blagg,* 438 S.W.2d 905, 909 (Tex.1969); *Garza,* 395 S.W.2d at 823. However, the rules of appellate procedure authorize this court to remand for further proceedings "when it is necessary to remand ... for further proceedings." TEX. R.APP.P. 81(c).

The precursor of rule 81 was rule 434 of the rules of civil procedure.[4] Under that rule, the supreme court has held that appel-

late courts have broad discretion to remand in the interest of justice. *Scott v. Liebman,* 404 S.W.2d 288, 294 (Tex.1966). As early as 1911, the supreme court laid down the rule to be followed in cases where a "no evidence" point has been sustained:

> [A]s long as there is a probability that a case has *for any reason* not been fully developed, this court will not render judgment on the insufficiency of the evidence. In other words, it must be apparent to the court that the case has been fully developed, and *that there is no probability* that any other evidence can be secured before it will render judgment.

*Paris and G.N.R.R. v. Robinson,* 104 Tex. 482, 492, 140 S.W. 434, 439 (1911) (emphasis added); *see also Morrow v. Shotwell,* 477 S.W.2d 538, 541–42 (Tex.1972); *City of Lucas v. North Texas Municipal Water District,* 724 S.W.2d 811, 820 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Zion Missionary Baptist Church v. Pearson,* 695 S.W.2d 609, 613 (Tex.App.—Dallas 1985, writ ref'd n.r.e.).

We can conceive of no case which better exemplifies the need to remand in the interest of justice than the case at bar. In this case of first impression, we have set out a rule for proving legal assistant's fees so that they are recoverable under a statute authorizing the award of attorney's fees. Because we have just enunciated this procedure, International had no reason to believe it was required to introduce the evidence we have now held necessary. Clearly, then, the case has not been fully developed as to attorney's fees.

Having found error in the judgment of the trial court on the issue of attorney's fees, we possess both the power and the obligation to remand because such recourse "will subserve better the ends of justice." *Zion Missionary Baptist Church,* 695 S.W.2d at 613, *quoting Massachusetts Mutual Life Ins. Co. v. Steves,* 472 S.W.2d

---

4. Rule 434 required remand "when it is necessary that some matter of fact be ascertained or the damage to be assessed or the matter to be decreed is uncertain." Rule 81(c) of the rules of appellate procedure simply states that remand is allowed "when it is necessary to remand ... for further proceedings." We consider the language of the two rules to be sufficiently similar that cases analyzing rule 434 also apply to our rule 81(c).

 

332, 333 (Tex.Civ.App.—Fort Worth 1971, no writ). Accordingly, we sever International's cause of action for attorney's fees and remand same to the trial court for a determination of the reasonable amount of attorney's fees, if any, that International should recover from Gill.